**Willie Ruth KEMP, Plaintiff,**

v.

**CLAIBORNE COUNTY HOSPITAL, Defendant.**

**Civ. A. No. W89–0076 (B).**

United States District Court, S.D. Mississippi, W.D.

June 4, 1991.

Elizabeth Gilchrist, Jackson, Miss., for plaintiff.

Melvin H. McFatter, Port Gibson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on the Motion of Defendant Claiborne County Hospital for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Willie Ruth Kemp was terminated from her employment with Defendant Claiborne County Hospital for refusing to give a urine sample as a part of the Hospital's mandatory drug testing of all its employees. Kemp sued Defendant Hospital, contending that the collection and testing of urine by her employer, a publicly owned and operated hospital, was an unreasonable search under the fourth and fourteenth amendments of the United States Constitution. Defendant filed the instant Motion for Summary Judgment, asserting that the facts of this case compel a conclusion that the testing was constitutionally reasonable. Having considered the Motion together with supporting and opposing memoranda and documentation, the Court is of the opinion that the Motion is well taken. Accordingly, the Court grants the Motion of Defendant for Summary Judgment for the reasons as set forth below.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Kemp was employed by Defendant Hospital for nearly twenty-three years, until she was terminated on April 21, 1989. In April 1988, Kemp performed two jobs for the Hospital. In one position she was head of the purchasing department of the Hospital, where she was in charge of ordering and stocking medical and other supplies. Kemp also worked as a scrub tech in surgery at the Hospital. Her duties in this position included bringing the patient from his room to surgery, preparing the patient for surgery and setting up the sterile field, laying out the proper instruments for surgery, and counting sponges before the patient was sewed up. Plaintiff was terminated from her position at Defendant Hospital for her failure to comply with Defendant's drug testing program.

The Hospital had instituted a hospital-wide drug test because it believed that it had reasonable grounds to suspect that a mass drug test of its employees would turn up evidence of work-related drug or alcohol use. According to the affidavit of Debra L. Griffin, the then Administrator of the Hospital, allegations were made by certain staff members of possible drug and/or alcohol abuse by employees while on the job. According to the affidavits of Griffin and Gladys Howard, a registered nurse employed by Defendant, these allegations were substantiated by the fact that Defendant's mass drug test did produce positive results of drug and alcohol use by certain employees.

The procedures employed by Defendant Hospital for the mass drug-testing are not in dispute. All employees were given advance written notice of the test and of the date and the place thereof. All employees, including Plaintiff, gave advance written consent to the test. Employees were required to give both blood and urine samples. The test was performed in a clinical hospital setting by trained medical personnel. The surgery recovery room which included a dressing screen and the adjoining bathroom were used. The test monitor was a registered nurse. Official discretion

was minimized by requiring that all full and part-time employees be tested and that everyone be required to submit to the same collection procedure. The employee was required to undress completely before providing a urine sample. The employee, however, was allowed to undress behind the privacy of a screen out of view of the testing monitor and was allowed to put on a hospital gown before emerging from behind the screen to obtain the specimen cup from the monitor. According to Griffin's Affidavit, employees were required to undress to prevent them from concealing any agent on their person to adulterate their urine sample. After receiving the specimen cup from the monitor, the employee then entered the bathroom alone and closed the door to the bathroom in order to produce the urine sample. After emerging from the bathroom with the urine sample, the employee was required to sign the papers that accompanied that employee's urine sample. The samples were then sent to an independent laboratory for testing and analysis. If a positive test were received back from the lab on any employee, that employee was so advised and was given the opportunity to provide another sample for testing at the same lab or at any other reputable lab of the employee's choosing. Employees were advised that they would not be terminated as a result of a first or second confirmed positive test but would be suspended from patient care and other duties until they tested negative.

Plaintiff refused to comply with this collection procedure because she objected to being required to undress. Plaintiff suggested to the monitor, Gladys Howard, an alternate procedure for producing a urine sample, whereby Plaintiff would remain fully dressed but would allow the monitor to accompany her into the bathroom and Plaintiff would produce the urine sample under the direct observation of the monitor. The monitor, Howard, had no authority to vary the urine collection procedure and referred this request for an alternate procedure to the Administrator, Griffin. According to Griffin's Affidavit, she refused to allow Plaintiff to use this suggested alternative procedure for the following

reasons: the suggested procedure was more intrusive on Plaintiff's privacy than the procedure used by Defendant, a variance in the testing procedure would have injected the undesirable element of official discretion into the program, another procedure would have been unfair to the other employees, and the overall testing results might have been prejudiced.

The only objection to the testing procedure raised by Plaintiff is that she did not believe she should have been required to undress before providing a urine sample. In her Complaint Plaintiff alleges that the uncontradicted procedures were not constitutionally reasonable. The sole issue to be decided in this case is whether the mandatory urinalysis for drug testing purposes refused by Kemp was a reasonable search under the fourth amendment of the United States Constitution. In its Motion for Summary Judgment Defendant asserts that, because there is no genuine issue of material fact, this is a question of law for the Court looking at the totality of the circumstances.

## II. ANALYSIS

### A. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment can be granted only if

everything in the record demonstrates that no genuine issue of material fact exists.

In the instant case Defendant has succeeded in demonstrating the absence of a genuine issue of material fact and has satisfied its burden of showing that it is entitled to summary judgment as a matter of law.

## B. RIGHT OF PRIVACY UNDER THE FOURTH AND FOURTEENTH AMENDMENTS

 The ultimate issue herein is whether Defendant Hospital violated Plaintiff's right to privacy under the fourth amendment, as applied to the states through the fourteenth amendment. The analysis of this issue is largely predicated on two cases issued by the United States Supreme Court in 1989. In *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), and *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Court set forth guidance in determining the constitutionality of employee drug testing by the public sector. The fourth amendment prohibits unreasonable governmental searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). In *Skinner* the Supreme Court held that the collection and testing of urine samples by a government employer constitutes a search under the fourth amendment and is, therefore, subject to fourth amendment analysis. *See Skinner*, 489 U.S. at 616–18, 109 S.Ct. at 1412–13. However, individualized suspicion of a particular employee is not constitutionally required. *Skinner*, 489 U.S. at 633, 109 S.Ct. at 1421. Neither is it necessary that a documented alcohol or drug problem exist in the work place at issue. *Von Raab*, 489 U.S. at 674–75, 109 S.Ct. at 1395. Determination of the reasonableness of such a search depends on the circumstances surrounding the search. The test promulgated by the Court balances the governmental interest sought to be protected against Plaintiff's right to privacy. *Skinner*, 489 U.S. at 633, 109 S.Ct. at 1421; *Von Raab*, 489 U.S. at 671, 109 S.Ct. at

1393. The Court did not articulate a bright line test to determine the constitutionality of drug-testing programs in the public sector. The test inheres in the balancing of the government's interest in protecting the public safety against intrusions into an employee's right to privacy.

In *Skinner* the Supreme Court recognized the strong governmental interest in testing without a showing of individualized suspicion for individuals in "safety-sensitive" positions. 489 U.S. at 631, 109 S.Ct. at 1420. The Federal Railroad Administration regulations required blood and urine tests of all personnel involved in an accident or who were in violation of certain safety regulations. The primary purpose of the testing was to deter employees in "safety-sensitive" positions from using illegal drugs or alcohol on the job and, secondarily, to determine the extent to which drug and alcohol use was a cause of railroad accidents. The Supreme Court found that the duties discharged by such individuals are "fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." *Id.* at 628, 109 S.Ct. at 1419. *Skinner* relied on the governmental interest of protecting the public from immediate threats to physical safety.

In *Von Raab* the Court found that United States Customs Service agents who are required to carry a firearm were likewise in "safety-sensitive" positions for which the government had a compelling interest in drug testing without individualized suspicion. 489 U.S. at 670–71, 109 S.Ct. at 1393–94. The Court found that "the public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force." *Id.* at 671, 109 S.Ct. at 1393. Such employees occupy "safety-sensitive" positions giving rise to a compelling governmental interest to ensure that the employee is not affected by drugs or alcohol in the performance of his duties.

In the instant case Defendant Hospital asserts that Plaintiff had a diminished expectation of privacy due to the safety-sensitive nature of her employment. Thus, De-

fendant argues, no individualized suspicion was necessary for drug testing. Plaintiff counters that there is a genuine dispute regarding whether Kemp held such a safety-sensitive position. Plaintiff asserts that this is a mixed issue of fact and law that is material to a determination whether the Hospital's drug testing program complied with the reasonableness requirements of the fourth amendment.

■ Questions involving reasonableness and other parameters of the fourth amendment's prohibition against unreasonable searches and seizures, if the surrounding facts and circumstances are not disputed, are matters of law for the Court. *United States v. Bowles,* 625 F.2d 526, 532–33 n. 7 (5th Cir.1980). In this case the facts surrounding the search are undisputed and the constitutional validity of the subject drug-testing program is a question of law which this Court will decide. Since the *Skinner* and *Von Raab* decisions, a number of cases have been decided, in whole or in part, by summary judgment. Such cases include: *National Treasury Employees Union v. Yeutter,* 918 F.2d 968 (D.C.Cir.1990) (decided on cross motions for summary judgment granted partly for plaintiff employees and partly for defendant government employer, depending on the determination of safety-sensitivity of certain jobs); *Holloman v. Greater Cleveland Regional Transit Authority,* 741 F.Supp. 677 (N.D.Ohio 1990) (summary judgment motion granted in favor of defendant government employer); *Moxley v. Regional Transit Services,* 722 F.Supp. 977 (W.D.N.Y.1989) (summary judgment granted for defendant government employer).

■ In promulgating the balancing test, the Supreme Court enumerated several factors relevant in performing the test. The Court did not attempt to assign weight to each factor nor did it indicate that any one factor is determinative. However, it is clear that the safety sensitivity of an employee's job is a highly important factor in the balancing test to determine the reasonableness of a drug-testing procedure. The most salient factor in determining the safety sensitivity of a job is the "immediacy" of

the threat posed to the public by an employee whose judgment and perception is impaired by drug and/or alcohol use. *American Federation of Government Employees v. Sullivan,* 744 F.Supp. 294, 300 (D.D.C.1990). The public safety rationale applies where a single misperformed duty could have irremediable consequences, such as where an employee could not rectify his mistake or other government employees would have no opportunity to intervene before harm occurs. *Harmon v. Thornburgh,* 878 F.2d 484, 491 (D.C.Cir. 1989), .cert. denied, —— U.S. ——, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

■ It is clear to the Court that Plaintiff Kemp occupied a safety-sensitive position at Defendant Hospital and that no individualized suspicion was necessary to implement a drug testing program. Plaintiff's job as head of the purchasing department of Defendant, although a vital and important responsibility essential to the proper supply of medical materials, does not rise to the level of "safety sensitive" under the pertinent analysis. Her duties, however, as a scrub tech involved direct, hands-on patient care, including bringing the patient from the hospital room to the operating room for surgery and being present and assisting during surgery. The safety sensitivity of the tasks of registered nurses have already been recognized. *Plane v. United States,* 750 F.Supp. 1358, 1367–68 (W.D.Mich.1990). The safety sensitivity of the tasks of licensed practical nurses has also been recognized. *Leckelt v. Board of Commissioners of Hospital District No. 1,* 909 F.2d 820, 832–33 (5th Cir.1990). The undisputed described tasks of Plaintiff in her capacity as a scrub tech in surgery mandates that her position be deemed "safety sensitive." An employee responsible for bringing a patient from his hospital room to the operating room whose judgment is impaired by drugs or alcohol could do irremediable harm by allowing such patient to fall from the gurney or operating table. Even under the supervision of a physician and registered nurse, a scrub tech could cause harm to a patient which could not be rectified. Examples would be bumping the surgeon or patient at a critical moment during the surgery or the failure

to properly count surgical sponges or instruments.

■ A member of the public becomes vulnerable when he enters a hospital for treatment, particularly when he submits to being placed under anesthesia for surgery. Members of the public should not bear the risk that employees who might suffer from impaired perception and judgment due to drug or alcohol abuse will occupy positions wherein such employees are responsible for the care and safety of the public. The government has a compelling interest in preventing such harm to members of the public. Accordingly, the Court concludes that any hospital employee who is involved in direct, hands-on patient care occupies a safety-sensitive position. Thus, Plaintiff Kemp occupied a safety-sensitive position at Defendant Hospital.

■ The expectation of privacy in the work place may also be diminished if the industry or position is subject to other regulations and requirements such as background investigations or medical examinations. *Von Raab*, 489 U.S. at 677–78, 109 S.Ct. at 1396–97. For a number of years the Hospital had required that Plaintiff and other employees directly involved in patient care to take a yearly physical which included the providing of blood and urine samples. Defendant had also required a yearly chest x-ray of employees which required them to undress completely from the waist up and don a gown. Plaintiff acknowledged submitting to these examinations and tests over the years. Moreover, Defendant Hospital at least since 1987 had a well-known policy embodied in its Employees' Personnel Manual reserving the right to test the blood and urine samples of employees for drugs and alcohol as deemed necessary by the Administration. In this case there was prior notice of the testing procedure and Plaintiff did sign a written consent prior to being asked to submit to the test. Under these circumstances, Plaintiff had a diminished expectation of privacy which was outweighed by the Hospital's compelling interest in the safety of its patients.

■ One factor considered in finding drug testing reasonable is that the test is not designed or used to meet the ordinary needs of law enforcement. The test results can not be used for criminal prosecution, absent the employee's consent. *Von Raab*, 489 U.S. at 665–66, 109 S.Ct. at 1390–91. In the instant case the results of the testing were used solely to determine each employee's fitness to work in the Hospital without endangering any patient through drug or alcohol use on the job.

■ In the instant case, as in *Skinner* and *Von Raab*, the testing procedures minimized the intrusiveness of collecting the urine sample. Factors often cited as lessening the intrusiveness of urine collection procedures include: (1) that the urine be collected in a medical-type environment, (2) that the collection be done by trained medical personnel, (3) that the procedures be similar to those required for regular physical examinations, and (4) that there is no requirement the test monitor observe the employee while producing the urine sample. The procedures used by Defendant in its drug testing met all of these factors, lessening the intrusiveness.

■ The Court notes that it is not necessary under the fourth amendment that a drug testing program use the least intrusive method available. *Skinner*, 489 U.S. at 629 n. 9, 109 S.Ct. at 1419 n. 9. Under fourth amendment analysis, all that is required is that the test procedure, under the totality of the circumstances, be reasonable. *American Federation of Government Employees v. Skinner*, 885 F.2d 884, 897 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990). The procedure herein requiring the employee to undress completely behind a screen and put on a hospital gown before producing a urine sample was reasonably calculated to prevent adulteration of the samples and did not require the intrusiveness of direct observation during undressing or the production of the urine sample.

One element of testing procedures that is frequently seized upon as rendering them unduly intrusive and, therefore, unreason-

able is a requirement that the test monitor directly observe the production of the urine sample. *See Skinner,* 489 U.S. at 626, 109 S.Ct. at 1417; *Von Raab,* 489 U.S. at 663, 109 S.Ct. at 1389; *Taylor v. O'Grady,* 888 F.2d 1189, 1198 (7th Cir.1989). It is this unreasonable alternative that Plaintiff unsuccessfully requested Defendant Hospital to use in collecting her urine sample. The request was denied because the suggested alternative was more intrusive than the procedure being used and it would have injected official discretion into the testing procedure.

The presence of official discretion with regard to the testing is another factor weighing against the constitutional reasonableness of a drug test. This weighs against reasonableness because the more official discretion allowed in the testing procedure the more likely there is to be some official discrimination regarding who gets tested and how they are tested. *Von Raab,* 489 U.S. at 667, 109 S.Ct. at 1391. Defendant Hospital's Administrator had eliminated official discretion from the testing procedures by requiring that all full and part-time employees be tested and by requiring that all who were tested submit to identical test procedures. If Defendant Hospital had varied the testing procedure to accommodate Plaintiff's personal preference, official discretion would have been injected into the testing procedures and would have opened the door to similar demands from other employees for variations in the test procedures. The ultimate effect would have been a discriminatory testing procedure which would have been unfair to the employees and would have increased the probability of adulterated samples, thereby destroying the reliability of the test procedure as a whole.

The Court finds that there is no genuine issue of material fact. The Court further finds that: (1) Defendant Hospital had a compelling interest in detecting and/or deterring drug and/or alcohol use by employees in safety-sensitive positions; (2) any employee, including Plaintiff, involved in direct, hands-on care of patients in the Hospital had a diminished expectation of privacy; (3) the procedure used by Defendant Hospital in collecting urine samples was reasonable; (4) no official discretion was injected into the testing procedures; (5) the test was not designed nor used to meet the ordinary needs of law enforcement; and (6) the employees had advance notice of the testing procedure. Therefore, the Court is of the opinion that Defendant's drug testing program as applied to Plaintiff did not unreasonably intrude on her right to privacy and was thus constitutionally valid. Further, the Court concludes that the subject testing program was a reasonable search under the fourth amendment, as applied to the states through the fourteenth amendment. Accordingly, the Court grants the Motion of Defendant for Summary Judgment.

IT IS, THEREFORE, ORDERED that the Motion of Defendant Hospital for Summary Judgment is granted and that Plaintiff's cause of action is hereby dismissed. A separate judgment will be entered in this cause.

SO ORDERED.