Fulvio **STANZIALE**, Plaintiff,

v.

**COUNTY OF MONMOUTH,**
**et al., Defendants.**

Civ. No. 94–1915 (CSF).

United States District Court,
D. New Jersey.

April 19, 1995.

---

Evans, Osborne, Kreizman & Bonney by Lewis H. Robertson, Little Silver, NJ, for plaintiff.

Malcolm V. Carton, Monmouth County Counsel by Frederick P. Niemann, Asst. Monmouth County Counsel, Freehold, NJ, for defendants, The Monmouth County Bd. of Health and Lester W. Jargowsky.

## OPINION

CLARKSON S. FISHER, District Judge.

This case involves a constitutional challenge against the employee drug testing program that was adopted by the Monmouth County Board of Health ("the Board") in February 1994 and rescinded a short time later. In an effort to provide a safe, drug-free facility for its employees and customers, the Board implemented a policy which re-

quired drug testing of every new-hire candidate; final hiring decisions were contingent upon proof that the prospective employee was drug free. In addition, the policy provided that each employee was to undergo drug screening in conjunction with an annual physical examination. Under the policy, executive management was given the right to secure urine samples for cause. By way of example, the policy stated that "cause may be and is not limited to accidents, bad work history and poor job attendance." (Def's Notice of Motion to Dismiss, Ex. A).

The plaintiff, Fulvio Stanziale, was employed by the Board as a Sanitary Inspector effective September 10, 1990. Upon his arrival at work on March 29, 1994, plaintiff found a urine specimen container and a chain of custody form on his desk. Defendant Lester Jargowsky, the plaintiff's immediate supervisor, requested that plaintiff and several of his co-workers provide a urine specimen for drug testing. Citing the absence of any circumstances which would trigger drug testing under the terms of the Board's drug policy, plaintiff refused to produce a urine specimen. On March 31, 1994, Jargowsky issued a formal Notice of Minor Disciplinary Action which cited, among other reasons, Stanziale's failure to comply with the drug policy. The penalty imposed pursuant to that disciplinary action was a four-day suspension without pay, effective April 5, 1994.

On or about April 15, 1994, the county drug testing policy was suspended, pending legal review. Upon comprehensive evaluation of the policy, county counsel recommended permanent suspension. On June 21, 1994, the Board implemented counsel's recommendations and rescinded the policy by formal written resolution. The Board also formally rescinded the Notice of Disciplinary Action and the suspension imposed upon plaintiff. In addition, plaintiff has received the salary that was previously withheld in connection with his suspension.

Meanwhile, on April 25, 1994, plaintiff filed the instant complaint against the Board of Health and Lester Jargowsky, pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution and various state law grounds. Insofar as the drug policy under which this case arises has been rescinded, plaintiff concedes that his claims for injunctive and declaratory relief as sought in Count One (a), (b) and (c), Count Two (a), (b) and (c) and Count Three (a), (b) and (c) are moot. Those claims are therefore dismissed. In Counts Four through Seven, plaintiff asserts that Jargowsky's conduct in suspending plaintiff for four days without pay violated his Fourteenth Amendment due process rights, his state constitutional due process rights, the public policy of the state of New Jersey and certain statutory and regulatory requirements. Again, insofar as the Board has rescinded the disciplinary action against plaintiff and restored the salary which had been withheld from him, plaintiff concedes that the causes of action raised in Counts Four through Seven of the complaint are moot. Those claims, therefore, are also dismissed.

In the remaining counts of the complaint, plaintiff maintains that the disciplinary action taken against him because of his refusal to comply with the request to produce a urine specimen violated his right to be free from unreasonable searches and seizures as secured by the federal and state constitutions. He also maintains that as a result of Jargowsky's alleged improper conduct he was caused to sustain genuine and substantial emotional distress.

Presently before the court is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. It is defendants' position that there was no Fourth Amendment violation because no search ever occurred. Defendants argue, therefore, that plaintiff's claims must be dismissed because, absent constitutional injury, there can be no relief under 42 U.S.C. § 1983. For the reasons discussed in Part I of this opinion, the motion to dismiss is denied. As an alternative, both defendants have moved pursuant to Fed.R.Civ.P. 56 for entry of an order granting summary judgment in their favor based on the doctrine of qualified immunity. For the reasons discussed in Part II of this opinion, the motion is granted with respect to the claims against defendant Jargowsky in his individual capacity, but denied with respect

to the claims against the Board and Jargowsky in his official capacity. The final application pending before the court is plaintiff's motion for partial summary judgment on the issue of liability against both defendants on the ground that the Board's drug testing policy, as applied to plaintiff by Jargowsky, violated plaintiff's federal and state constitutional rights to be free from unreasonable searches and seizures. For the reasons discussed in Part III of this opinion, that motion is granted.

## I.

■ A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) tests the sufficiency of the allegations contained in the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In appraising the sufficiency of the complaint, the critical inquiry is whether, taking the allegations of the complaint as true and viewing them liberally, giving plaintiff the benefit of all inferences which fairly may be drawn therefrom, it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ To sustain a claim under 42 U.S.C. § 1983, a plaintiff must establish that he has been deprived of a right secured by the Constitution and the laws of the United States, and that such deprivation of rights was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). Plaintiff's § 1983 claim is predicated on the alleged deprivation of his right to be free from unreasonable searches and seizures as secured by the Fourth Amendment. It is beyond dispute that a mandatory urinalysis constitutes a search within the meaning of the Fourth Amendment. *Skinner v. Railway Labor Exec. Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). Pointing out that Stanziale refused to comply

with the order to produce a urine specimen for testing, defendants argue that there can be no Fourth Amendment violation where no actual search has occurred. In light of the contrary authority on that issue, defendants' argument must fail.

■ As the Supreme Court held in *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, (1968), it is improper to punish an employee for exercising rights guaranteed to him under the Constitution. Based on that premise, the Ninth Circuit Court of Appeals has held, and this court agrees, "[b]ecause the right to be free from unreasonable searches is contained explicitly in the Fourth Amendment, it follows that the right to be free from adverse consequences for refusing to submit to an unreasonable search must also be found there." *Jackson v. Gates,* 975 F.2d 648, 653 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2996, 125 L.Ed.2d 690 (1993). Likewise, in *Fraternal Order of Police, Lodge No. 5 v. Tucker,* 868 F.2d 74 (3d Cir.1989), wherein police officers sought recovery for Fourth Amendment violations in connection with their discharge for refusal to submit to urinalysis, the court implicitly found that such refusal implicated the Fourth Amendment when it proceeded to analyze the reasonableness of the city's conduct in ordering the drug testing. *See also, Egloff v. New Jersey Air National Guard,* 684 F.Supp. 1275, 1279, n. 2 (D.N.J. 1988) ("We reject unhesitatingly the government's somewhat facile argument that because the Egloffs refused to take a urinalysis and no "search" actually occurred, there can be no violation of the Fourth Amendment").

In urging the court to find that the Fourth Amendment is not implicated in this case, defendants inappropriately rely on the district court's decision in *Everett v. Napper,* wherein the court granted the defendant's motion for summary judgment on the plaintiff's Fourth Amendment claim, holding that there can be no Fourth Amendment violation when there has been no actual search. 632 F.Supp. 1481, 1484 (N.D.Ga.1986). Although the Eleventh Circuit Court of Appeals affirmed the grant of summary judgment, finding no violation of the Fourth Amendment, it did so because it found that the drug testing

procedures utilized in that case were reasonable under the circumstances presented[1]. *Everett v. Napper*, 833 F.2d 1507, 1511–12 (11th Cir.1987). Notwithstanding that the plaintiff had refused the order to submit to a urine screening, the court nevertheless observed that "[b]ecause Everett's continued employment was contingent upon his subjection to a search, we must determine whether the search offended the Fourth Amendment." *Id.* at 1511. Thus, contrary to defendants' contention, *Everett v. Napper* is consistent with those cases previously cited in this opinion and lends further support for this court's holding that a public employee may properly raise a Fourth Amendment challenge to an employer's order to undergo urine screening for the detection of drugs if adverse consequences follow from refusal to comply with that order. In this case, the Board imposed a four day suspension without pay for Stanziale's refusal to submit a urine specimen when ordered to do so. Thus, it cannot be said that Stanziale can prove no set of facts upon which relief can be granted. The disciplinary action imposed by the Board is sufficient to maintain Stanziale's claim that his Fourth Amendment rights were violated[2]. Consequently, the defendants' motion to dismiss is denied.

## II.

■ Advancing an alternative theory to escape liability, defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c), which provides that judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Board and Jargowsky both maintain that they are entitled to judgment as a matter of law under the doctrine of qualified immunity. As a threshold matter, the court notes that qualified immunity for claims brought under 42 U.S.C. § 1983 clearly does not extend to municipal entities. *Owen v. City of Independence*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980); *Hynson v. City of Chester*, 827 F.2d 932, 934 (3d Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988). Thus, the Board is not entitled to the protection afforded by the doctrine of qualified immunity. The Board's motion for summary judgment is therefore denied.

■ The defense of qualified immunity is similarly unavailable in an action against a public official in his official capacity. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). Thus, the court cannot grant summary judgment in favor of defendant Jargowsky with regard to the claims against him in his official capacity. The court must, however, address Jargowsky's claim of qualified immunity as it relates to the individual-capacity claims.

■ The modern doctrine of qualified immunity was established in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), wherein the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate

1. Everett conceded in his brief that a mandatory urinalysis, if based on reasonable suspicion, would be permissible under the Fourth Amendment. The 11th Circuit Court of Appeals found, without question, that the public employer had reason to suspect that Everett was involved in the use of drugs. Thus, the appellate court agreed that there was no Fourth Amendment violation. That, of course, is different than finding that the Fourth Amendment is not implicated where no actual search takes place.

2. Defendants maintain that there were other valid reasons to support the disciplinary action taken against Stanziale, independent of his refusal to comply with the order to undergo drug testing. Defendants argue that the disciplinary action does not amount to constitutional injury, without which plaintiff's claim cannot be sustained. It is not disputed, however, that the Notice of Minor Disciplinary Action cited refusal to comply with the drug policy as one of the reasons why such disciplinary action was being taken. The fact that there may have been other reasons to justify the suspension does not remove the Fourth Amendment from the case. If defendants can prove that plaintiff's alleged injuries are not the consequence of his refusal to undergo drug testing, but, rather, are the result of other events, that will of course impact on the amount of damages, if any, to which the plaintiff is entitled.

clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. For immunity to attach, the right allegedly violated must have been clearly established at the time the challenged activity took place. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Moreover, courts look to the objective reasonableness of the official's conduct, measured by reference to clearly established law. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039.

Drug testing of employees is a relatively new phenomenon. The constitutional contours of such programs continue to be shaped as the courts are consistently called upon to determine their constitutional validity. Although it has been clearly established that courts must use a balancing test to determine the constitutional validity of a drug testing program, it certainly is not clear just how that delicate balancing is to be performed. Likewise, despite the clear general principles governing mandatory drug testing of government employees, the law is not so defined when it comes to the specific circumstances in which it is permissible for public employers to conduct drug testing in the absence of reasonable suspicion. Hence, it cannot be said that the law on this subject was sufficiently clear at the time Jargowsky ordered Stanziale to produce a urine specimen. In the absence of such clearly established law on the subject, a reasonable public official in Jargowsky's position could not be expected to know whether his conduct was problematic. It has been said that the doctrine of qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Mal-*

*ley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Jargowsky does not fall into either of those categories and thus is protected against civil liability based on the doctrine of qualified immunity. Consequently, Jargowsky's motion for summary judgment is partially granted. Only those claims brought against him in his individual capacity will be dismissed; the claims against him in his official capacity remain viable.[3]

### III.

■ Next the court turns to plaintiff's motion for partial summary judgment on the issue of the defendants' liability with respect to the claims that the Board's drug testing policy, as written[4] and as applied to plaintiff by Jargowsky, violated plaintiff's federal and state constitutional rights to be free from unreasonable searches and seizures. In *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), and *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), the Supreme Court set forth the test for determining the constitutionality of public employee drug testing programs and announced that the collection and testing of urine samples by a government employer need not be justified by the existence of individualized suspicion to be considered constitutionally valid.

■ In *Skinner,* the court upheld the subsection of certain regulations promulgated by the Federal Railroad Administration, which mandate that all railroad employees directly involved in any train accident produce blood and urine samples for toxicological testing, even if there is no reasonable basis upon which to suspect that those employees were under the influence of drugs or alcohol. In so concluding, the court held that in certain limited circumstances, "where the

---

3. Although punitive damages are available in a personal-capacity suit against a public official, they are not available under § 1983 from a municipality. *See Kentucky v. Graham,* 473 U.S. at 167, n. 13, 105 S.Ct. at 3106, n. 13. Because the personal-liability claims against Jargowsky are hereby dismissed, counts One (e), Two (e) and Three (e), seeking punitive damages, are likewise dismissed.

4. Because the Board's policy has been rescinded, the challenge against the policy as written is moot. The court's discussion of this issue is therefore limited to the constitutionality of the policy as it was purportedly applied to Stanziale.

privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Id.* at 624, 109 S.Ct. at 1417. In reaching its conclusion, the court found that the drug testing procedures contemplated by the regulations posed only limited threats to the justifiable expectations of privacy of the railroad employees. By contrast, the court found that the governmental interest in conducting suspicionless testing was compelling because those employees subject to the tests "discharge duties fraught with such risk of injury to others that even a momentary lapse of attention can have disastrous consequences." *Id.* at 628, 109 S.Ct. at 1419. The court stressed the importance of discarding the need for individualized suspicion because the employees subject to testing under the regulations were capable of causing "great human loss before any signs of impairment become noticeable to supervisors or others." *Id.* The court ultimately concluded that the governmental interest served by suspicionless testing—i.e., deterring employees engaged in safety-sensitive tasks from using controlled substances—outweighed the minimal intrusions imposed upon the employees' right to privacy. *Id.* at 633, 109 S.Ct. at 1421–22. Thus, the permissibility of a particular drug policy is judged by balancing the governmental interest being promoted by the policy against the intrusion imposed upon the employee's right to privacy. *Id.* at 619, 109 S.Ct. at 1414.

The Supreme Court reached a similar result in *Von Raab*, which involved a constitutional challenge to the drug screening program implemented by the Customs Service, which required urinalysis testing of those employees who were either directly involved in the interdiction of drugs or who were required to carry firearms. The court held that the government's compelling interest in performing suspicionless drug testing, in an effort to promote safety and the integrity of our nation's borders, outweighed the privacy interests implicated by the drug testing program. 489 U.S. at 670–72, 109 S.Ct. at 1393–94. Again, the court's reasoning was

grounded in the safety-sensitive nature of the employment positions in question. *Id.* at 670, 109 S.Ct. at 1393. Thus, the safety-sensitive nature of an employee's position should be a very significant factor in the balancing test that is utilized to determine the validity of a suspicionless drug testing program. *Kemp v. Claiborne County Hospital,* 763 F.Supp. 1362, 1367 (S.D.Miss.1991). Disposal of the protection afforded by the individualized suspicion requirement is justified when the targeted employee's position is such that a single misperformed duty could directly result in disastrous consequences. It is not justified, however, where the nexus between the employee's blunder and the potential injury is so attenuated as to alleviate the risk of creating irremedial consequences. *See, Harmon v. Thornburgh,* 878 F.2d 484, 491 (D.C.Cir.1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).

Defendants argue that Stanziale, a Sanitary Inspector, holds a position that requires him to perform safety-sensitive tasks. Plaintiff has submitted a written description of his job responsibilities, which provides as follows:

*Definition:* Under direction, performs sanitary inspection work involved in the enforcement of relevant public health law within the concerned jurisdiction; does related work as required.

*Examples of Work:* Makes inspections to enforce relevant sanitary and health laws; when violations of relevant sanitary and health laws are found, determines the cause and takes proper corrective action; periodically inspects restaurants and other eating places, investigates nuisances and violations of the sanitary code; gives testimony in court cases; prepares suitable reports; maintains necessary records and files.

(Pl's Brief in Support of Motion for Partial Summary Judgment at Pa–6). Defendant Jargowsky has agreed that this is an accurate description of Stanziale's job responsibilities. (Jargowsky Dep. Tr. at 57).

Based upon a review of the undisputed job description, it is conceivable that an error committed by a sanitary inspector could have

a negative impact on public safety. For example, if the inspector fails to exercise proper judgment and issues a satisfactory assessment to a restaurant that in fact is not in compliance with relevant health and sanitary laws, a consumer may potentially suffer the consequences. However, the nexus between the inspector's misconduct and the potential injury is too attenuated to justify the removal of the protection afforded the employee by the individualized suspicion requirement. Stanziale's job responsibilities do not pose an immediate threat to the public; this is not a situation like that in *Skinner* or *Von Raab* where there is no opportunity to notice signs of impairment before significant harm occurs. Stanziale's position is also distinguishable from the hazardous-material inspectors who were found to hold safety sensitive positions in *American Fed'n of Gov't Employees v. Skinner*, 885 F.2d 884 (D.C.Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1960, 109 L.Ed.2d 321 (1990). The record in that case revealed that hazardous-material inspectors were exposed to "poisonous, explosive, and highly flammable commodities that could be ... suddenly ignited by improper handling." *Id.* at 891. In the exercise of his job duties, Stanziale is not exposed to that type of immediate risk of harm, nor is the general public. This court concludes, therefore, that Stanziale's position, as Sanitary Inspector, does not rise to the level of "safety-sensitive" under the relevant case law.

The governmental interest in providing a safe, drug-free facility for all employees and customers of the Monmouth County Health Department will not be jeopardized by insistence upon a showing of individualized suspicion to warrant drug testing. Thus, absent a showing of individualized suspicion, Jargowsky's order directing Stanziale to produce a urine specimen for drug screening violated plaintiff's constitutional rights. *Accord, Na-*

*tional Treasury Employees Union v. Yeutter*, 918 F.2d 968 (D.C.Cir.1990), and *American Fed'n of Gov't Employees v. Derwinski*, 777 F.Supp. 1493 (N.D.Cal.1991). No facts in the record even begin to suggest that Stanziale was directed to supply a urine specimen because of any suspicion that his work performance was impaired by the use of drugs. Jargowsky's own deposition testimony suggests he had no reason to suspect that Stanziale used drugs. (Jargowsky Dep. at 51–57.) Therefore, partial summary judgment on the issue of liability [5] is granted in favor of plaintiff and against Jargowsky, in his official capacity, and against the Monmouth County Board of Health [6]. The only issue remaining, then, is the amount of damages to which Stanziale is entitled as a result of the adverse consequences that followed from his exercise of a right guaranteed him under the constitution. An order accompanies this opinion.

### ORDER

THIS MATTER having come before the court on motion by defendants, the Monmouth County Board of Health and Lester W. Jargowsky, to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and on motion by plaintiff, Fulvio Stanziale, for partial summary judgment; and the court having considered the written submissions and oral argument of counsel; and for good cause shown,

IT IS on this 18th day of April, 1995.

ORDERED that defendants' motion to dismiss be and is hereby denied; and it is further .

---

**5.** Where the surrounding facts and circumstances are not in dispute, the reasonableness of a urinalysis search is a question of law for the court to decide. Because Stanziale's job responsibilities are not in dispute, and because there is not a single fact to even hint that Jargowsky had reasonable suspicion to subject Stanziale to testing, summary disposition of the liability issue is appropriate.

**6.** Jargowsky is liable to Stanziale for the deprivation of his Fourth Amendment rights under the literal language of 42 U.S.C. § 1983, as Jargowsky was the person who subjected Stanziale to the deprivation of those rights. Because it was the execution of the Board's policy which inflicted the injury, the Board is likewise responsible under § 1983. *Monell v. Dep't of Social Servcies*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**148**

ORDERED that defendants' motion for summary judgment is granted with respect to the claims against defendant Lester W. Jargowsky in his individual capacity, but denied with respect to the claims against the Monmouth County Board of Health and Lester W. Jargowsky in his official capacity; and it is further

ORDERED that plaintiff's motion for partial summary judgment on the issues of liability against defendants on the ground that the Board's drug testing policy, as applied to plaintiff by Jargowsky, violated plaintiff's federal and state constitutional rights to be free from unreasonable searches and seizures be and hereby is granted.