Dear Mr. Lawrence:
You have requested an opinion of the Attorney General regarding the provisions of the Nurse Practice Act ("Act"), found at R.S.37:911, et seq., as it relates to the Morehouse Parish Hospital Service District ("District").
You state that a licensed registered nurse/applicant for employment with the District took a mandatory drug screening test, the positive results of which indicated a possible impairment. As a result, the District did not employ the applicant. The Louisiana State Board of Nursing ("Board") has requested the District, through its Human Resources Director ("Director"), to supply the Board with a copy of the test results. The applicant did not sign a waiver and/or release authorizing the District to divulge the requested information to the Board. In fact, you state that the information received by the Director was obtained with the nurse in question believing that she had an expectation of privacy. The Director is not a registered nurse.
The District wishes to cooperate, but is concerned that if it releases the information sought, it will violate the constitutional rights of the applicant which, in turn, will subject the District and its Director to liability.
The statutory provisions comprising the Board's authority to regulate registered nurses is found in Part I of Chapter IX of Title 37. R.S. 37:911 provides the following with regard to the intent and purposes of said provisions:
 "A. The legislature finds that the practice of nursing by qualified individuals is necessary to protect the public health, safety, and welfare of the citizens of this state.
 B. The legislature further finds that the practice of nursing by a registered nurse and an advanced practice registered nurse should be regulated in the public interest.
 C. Therefore, it is the legislative intent and the purpose of this Part to promote, preserve, and protect the public health, safety, and welfare by regulating nursing education and practice and ensuring that any individual practicing or offering to practice nursing or using the title `registered nurse' or `advanced practice registered nurse' shall be licensed before engaging in such practice." [Emphasis added.]
As can be seen from the above, the legislature has vested the Board with the authority to license and regulate registered nurses under its police power to protect and preserve the public health, safety and welfare of its citizens. Section 918 further defines the duties of the Board, in pertinent part, as follows:
"The board shall . . .
* * *
 (7) Provide procedure and conduct hearings for the discipline of individuals as needed and establish alternatives to the disciplinary process when considered appropriate by the board.
 (8) Cause the prosecution of all persons violating any provision of this Part."
The grounds for disciplinary proceedings are found at Section 921 which provides, in pertinent part, the following:
 "The board may deny, revoke, suspend, probate, limit, or restrict any license to practice as a registered nurse or an advanced practice registered nurse, impose fines, and assess costs, or otherwise discipline a licensee upon proof that the individual:
 * * *
 (4) Has demonstrated actual or potential inability to practice nursing with reasonable skill and safety to individuals because of use of alcohol or drugs;
 (5) Is guilty of aiding or abetting anyone in the violation of any provisions of this Part." [Emphasis added.]
In addition, Section 925 reads, in pertinent part, with respect to violations and penalties, as follows:
 "A. No person shall engage in any of the following activities:
 * * *
 (8) Aid or abet anyone in the violation of any provisions of this Part.
 (9) Violate any provision of this Part.
 B. Whoever violates any provision of this Part shall, upon conviction, be fined not more than five thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
 C. If a person licensed to practice as a registered nurse or advanced practice registered nurse is found guilty of violating any provision of this Part, the board may suspend, probate, limit, or otherwise restrict, or revoke the license of such person." [Emphasis added.]
Section 931 provides, in pertinent part, with respect to civil immunity as follows:
 "A. There shall be no civil liability and no licensee or other individual shall have a cause of action or a claim for damages against any person or institution providing information to the board, its members, officers, designated agents or representatives, employees, where the individual or institution acts without malice and in the reasonable belief that such information is accurate." [Emphasis added.]
The statutory provisions relating to public employee drug testing are found at R.S. 49:1015. It provides, in pertinent part, the following:
 "B. A public employer may require samples from prospective employees, as a condition of hiring, to test for the presence of drugs.
 C. A public employer may implement a program of random drug testing of those employees who occupy safety-sensitive or security-sensitive positions.
 D. Any public employee drug testing shall occur pursuant to a written policy, duly promulgated, and shall comply with the provisions of this Chapter." [Emphasis added.]
The confidentiality of test results is governed by Section 1012 which provides, in pertinent part, the following:
 "A. All information, interviews, reports, statements, memoranda, or test results received by the employer through the drug testing program are confidential communications and may not be used or received in evidence, obtained in discovery, or disclosed in any public or private proceedings, except in an administrative or disciplinary proceeding or hearing, or civil litigation where drug use by the tested individual is relevant.
 B. No cause of action for defamation of character, liable, slander, or damage to reputation or privacy arises in favor of any person against an employer or testing entity who has established a program of drug or alcohol testing in accordance with this Chapter, unless:
 (1) The results of that test were disclosed to any person other than the employer or testing entity, an authorized employee or agent of the employer or testing entity, the tested employee, or the tested prospective employee;
 (2) The information disclosed was based on a false test result or a failure to comply with the provisions of this Chapter;
 (3) All elements of an action for defamation of character, liable, slander, or damage to reputation or privacy as established by statute or civil law, are satisfied." [Emphasis added.]
With the above statutory framework set in place, we now examine the constitutional issues inherent in pre-employment drug testing.
The U.S. Supreme Court has held that a compelled intrusion into the body for blood to be analyzed for illicit drugs and alcohol content must be deemed a search for purposes of the Fourth Amendment. Skinner v. Railway Labor Executives'Association, 489 U.S. 602, 109 S.Ct. 1402 (1989). As such, it must comply with the standards of reasonableness imposed by the Fourth Amendment. Schmerber v. California, 384 U.S. 757,86 S.Ct. 1826 (1966). Under federal law, the reasonableness,vel non, of the search is measured by balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion. O'Connor v.Ortega, 480 U.S. 709, 107 S.Ct. 1492 (1987).
At the state level, LSA-Const. Art. I, Section 5 protects individuals from unreasonable searches, seizures, or invasions of privacy. Our Supreme Court has recognized that the state constitutional provision provides for a higher standard of liberty than that afforded by the federal constitution. Stateof Louisiana v. Victor Church, 538 So.2d 993 (La. 1989).
The nature of applicant's job as a registered nurse involves direct, hands-on patient care. The safety-sensitivity of tasks of a registered nurse has been duly recognized. Kemp v.Claiborne County Hospital, 763 F. Supp. 1362 (S.D. Miss. 1991) and Plane v. United States, 750 F. Supp. 1358
(W.D. Mich. 1990).
In light of the above analysis, this office is of the opinion that the mandatory pre-employment drug screening of a registered nurse-applicant is clearly permissible under Louisiana law.National Treasury Employees Union v. Von Raab,109 S.Ct. 1384 (1989) and Attorney General Opinion Nos. 93-473, 93-268 and 91-16.
We believe that the issue of the disclosure of test results must also be examined in light of the higher standard afforded the applicant's right to privacy endowed by LSA-Const. Art. I, Section 5. As previously noted, R.S. 49:1012 demands a high degree of care and responsibility on the part of the employer as evidenced by the mandate that:
 "All information, interviews, reports, statements, memoranda, or test results received by the employer through its drug testing program are confidential communications."
It further provides that such information shall not be:
 ". . . used or received in evidence, obtained in discovery, or disclosed in any public or private proceedings, except in an administrative or disciplinary proceeding or hearing, or civil litigation where drug use by the tested individual is relevant."
Section 1012(B)(1) grants limited immunity to the testing entity (i.e., District), but only if the disclosure of the results of the test are limited to the employer or testing entity, an authorized employee or agent of the employer or testing entity, the tested employee or the tested prospective employee.
The Nurse Practice Act authorizes disciplinary proceedings against a registered nurse demonstrating the actual or potential inability to practice nursing because of the use of alcohol or drugs, as well as the prosecution of any person who aids and abets anyone in the violation of its provisions. The Act is silent with regard to the disclosure of drug test results. While R.S. 37:931 grants civil immunity to any person or institution providing information to the Board, the term "information" is not defined, nor is there any mention of drug test results in the statute.
Legal counsel for the Board advises that there are currently no administrative or disciplinary proceedings or hearings, or civil litigation pending against the applicant which would warrant disclosure of the test results pursuant to R.S. 49:1012. While it can be argued that the civil immunity provisions in R.S. 37:931
would shield the Director and the District from liability, that shield is pierced if the disclosure is deemed to be with malice. While the term "malice" is not defined in Section 913, Black's Law Dictionary defines same to include "The intentional doing of a wrongful act without just cause or excuse; a conscious violation of the law which operates to the prejudice of another person".
As previously discussed, you have indicated that the test results received by the Director were obtained with the applicant'sbelief that he or she had an expectation of privacy. Under these circumstances, and absent a waiver of confidentiality from the applicant, the communication of the test results to the Board could be viewed not only as a breach of promise of confidentiality, but a communication made in bad faith or with malice.
Finally, we question the applicability of R.S. 37:925(A)(8) to the Director. As previously discussed, the provision makes it a felony for any person to aid or abet anyone in the violation of the provisions of the Act. It is axiomatic that a penal provision, such as this one, must be strictly construed. Black's Law Dictionary, defines "Aid and Abet" as follows:
 "Help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its commission."
Based upon the facts presented for our review, it would appear that the District's reluctance to furnish the Board with the information requested is motivated, not by an intention to facilitate a crime, but rather by its desire to comply with state law and avoid civil liability.
In summary, there is no question that the pre-employment drug testing of a registered nurse/applicant by the District constitutes a reasonable search for a valid state interest to protect those members of the general public who are in need of medical care. However, we recommend that the provisions of R.S.49:1012 regarding the communication of confidential drug test results be strictly adhered to by the District.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _________________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob III/cla
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General