Tommy L. **EVERETT**

v.

**George NAPPER, et al.**

**Civ. No. C85–3154.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 17, 1986.

Antonio L. Thomas, Donald M. Dotson, Thomas & Dotson, Atlanta, Ga., for plaintiff.

Marva Jones Brooks, W. Roy Mays, III, George R. Ference, Omni International, Atlanta, Ga., for defendant(s).

## ORDER

ORINDA D. EVANS, District Judge.

This civil rights action arising from Plaintiff's termination as a firefighter with the City of Atlanta Bureau of Fire Services is before the court on Defendants' motion for summary judgment.

The following facts are undisputed. Plaintiff was a firefighter for the City of

Atlanta Bureau of Fire Services. As a result of a previous narcotics investigation of another firefighter, James Hodges, the City of Atlanta's Department of Public Safety, Office of Profesional Standards, began its own administrative investigation into possible misconduct by fire bureau employees. As part of the Hodges investigation, the DeKalb County Narcotic Squad had conducted a surveillance of Hodges' home and had observed several employees of the Bureau of Fire Services going into that address. The DeKalb County Narcotics Squad videotaped persons entering and leaving Hodges' apartment, and representatives of the Atlanta Department of Public Safety were given an opportunity to review these videotapes. Plaintiff did not appear in any of the videotapes.

Hodges was subsequently interviewed by Sgt. C. Lathrop of the Office of Professional Standards. At this interview, Hodges identified a lengthy list of names of fire bureau personnel who purchased marijuana from him within the prior three months. Hodges stated to Defendant Lathrop that he had sold marijuana to Plaintiff within three months prior to that interview.

On the basis of Hodges' statement, Plaintiff was called into the Office of Professional Standards and interviewed by Lathrop on August 4, 1984. Lathrop informed Plaintiff that he was making an administrative investigation into apparent drug use and sales within the Department of Public Safety, but that there was no criminal investigation. Lathrop also informed Plaintiff of Commissioner Napper's memorandum of August 3, 1984, which stated that:

The Office of Professional Standards is presently investigating what is alleged to be wide spread use and trafficing of illegal drugs within the bureau.

Through this memorandum, I am directing all personel to fully cooperate in this investigation. Cooperation includes, but is not limited to, appearing as directed, giving statements as required, submitting to polygraph examinations if requested and submitting to any drug screening tests deemed appropriate by the Office of Professional Standards.

Failure to comply with any part of this directive will be considered as disobeying a direct order from the Commissioner of Public Safety. Any employee disobeying this order will be immediately suspended and the appropriate charges will be preferred.

There is a dispute as to whether Plaintiff was actually shown Commissioner Napper's memorandum. In any case, Lathrop ordered Plaintiff to submit to a urinalysis test. Plaintiff refused, and signed a written statement that his refusal to cooperate was based on his "non-involvement pertaining to this particular investigation."

Plaintiff's refusal to cooperate in the investigation, and his failure to comply with Lathrop's order, resulted in his immediate suspension from his employment. Formal charges were also brought against Plaintiff for violating the work rules of the Department of Public Safety. Specifically, Plaintiff was charged with violating Rule 2.09, which requires that "employees of the department shall promptly obey all proper and lawful orders of supervisors and other employees assigned to act in a supervisory capacity," due to his refusal to obey Lathrop's order to take the urinalysis test. Plaintiff was further charged with violating Rule 1.03, which provides that "employees of the department shall be truthful, at all times, both in their spoken and written words," because he stated that he had told Captain Rosemond that he lost his identification, when Captain Rosemond had no recollection of any such statement. Plaintiff was also charged with violating Rule 2.33, which states that "every employee of the department shall familiarize herself/himself with and conform to rules, regulations, directives and standard operating procedures of the department," due to his refusal to cooperate in the investigation as required by Department of Public Safety General Order No. 83–4.[1]

---

1. Department of Public Safety General Order 83–4, section 4, ¶ A, requires that employees fully cooperate with the internal investigations personnel or any employee authorized by the Commissioner to conduct an investigation.

The Department notified Plaintiff that a hearing on the work rule violation charges would be held before the disciplinary hearing panel on September 12, 1984. A hearing was held, after having been continued, on October 3, 1984. Plaintiff appeared before the panel with counsel and participated in the hearing by questioning witnesses and presenting evidence. As a result of that hearing, the panel found that Plaintiff had violated the three work rules, and submitted their recommendations to Commissioner Napper. The Commissioner also concluded that Plaintiff had violated the three work rules and ordered that his employment be terminated.

Plaintiff appealed the order of discharge to the City of Atlanta Civil Service Board, and the Board gave Plaintiff a full hearing on December 13, 1984. Plaintiff appeared at this hearing with counsel and contested the charges. The Board concluded that Plaintiff had violated the Department's work rules and voted to dismiss him.

On June 3, 1985, Plaintiff filed this action seeking equitable relief and damages. Plaintiff alleges that Defendants' termination of his employment violated his Fourth and Fourteenth Amendment rights. Count One of Plaintiff's complaint alleges that the requirement that he undergo a urinalysis violated his Fourth Amendment right to be free from unreasonable search and seizure. Plaintiff contends that a urinalysis is a search which was imposed on him without a warrant or any objective evidence linking him to drug usage. Count Two alleges that Defendants' order that Plaintiff undergo a urinalysis, and their termination of his employment upon his failure to undergo such a test, was arbitrary and capricious in violation of his Fourteenth Amendment procedural and substantive due process rights. Count Three also alleges that Defendants' order and disciplinary actions violated Plaintiff's substantive and procedural due process protections, as Defendants had no valid, previously promulgated policy requiring employees of the Bureau of Fire Services to take urinalysis tests. Counts Four and Five allege violations of Plaintiff's equal protection and due process rights. Plain-

tiff asserts that other employees who admitted to knowing Hodges were not required to take a urinalysis test and were not terminated from their employment. Count Six alleges a pendent state claim of invasion of privacy.

■ Defendant first argues that summary judgment on Plaintiff's Fourth Amendment claim is appropriate because although Plaintiff was ordered to submit to a urinalysis test, he did not actually take any such test. There was therefore no "search" within the meaning of the Fourth Amendment. The court agrees that there can be no Fourth Amendment violation when there has been no actual search. Summary judgment for Defendants is therefore granted on Count One.

Defendants next argue that Plaintiff received the procedural due process to which he was entitled before termination of his employment. Defendants point out that Plaintiff received notice that a hearing would be held to review the charges against him. Plaintiff then appeared at a full hearing before the Bureau of Fire Services disciplinary review panel, at which he was represented by counsel, presented evidence, and cross examined witnesses. He then appealed the panel's adverse decision to the Atlanta Civil Service Board, where he again was represented by counsel, presented evidence, and confronted the witnesses against him. Defendants contend that these procedures satisfied the essential elements of due process, which requires that an individual receive notice and opportunity to be heard before being deprived of a property interest. *See Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Cleveland Board of Education v. Loudermill*, —— U.S. ——, ——, 105 S.Ct. 1487, 1495–96, 84 L.Ed.2d 494, 506 (1985).

*Loudermill* is the Supreme Court's most recent pronouncement on the requirements of due process in the context of public employment. The plaintiffs in that case were discharged as employees of public boards of education. Plaintiff Loudermill was informed of his termination by letter

from the Cleveland Board of Education, but was not afforded an opportunity to respond to the charges forming the basis of his termination. The Court concluded that due process required only that a tenured public employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story ... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*

■ It is undisputed that the incident for which Plaintiff was ultimately discharged occurred on August 4, 1984. Plaintiff received notice on September 9, 1984 that a hearing would be held to review the charges against him on September 12, 1984. The formal hearing before the Bureau of Fire Services panel was actually held on October 3, 1984. After appealing the panel's decision to the City of Atlanta Civil Service Board, Plaintiff received another formal hearing on December 13, 1984. At both hearings, evidence was presented to support the written charges against Plaintiff. Plaintiff appeared with counsel, testified and presented evidence, and cross-examined witnesses. Under *Loudermill,* these pretermination procedures satisfy the requirements of due process. *See also Kelley v. Smith,* 764 F.2d 1412, 1414 (11th Cir.1985).

■ Plaintiff nevertheless argues that his suspension without pay from August 4, 1984 to October 3, 1984, the date of his first hearing, violated his procedural due process rights. Plaintiff apparently contends that he should have received a pre-suspension hearing, which would "serve as a check against mistaken decisions," *Loudermill, supra* —— U.S. at ——, 105 S.Ct. at 1495–96, 84 L.Ed.2d at 506, in the same manner as a pretermination hearing. There is, however, no authority for this argument. It is well established that suspension in circumstances such as the present, where a full hearing is held within a reasonable amount of time after the suspension, does not violate due process. *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365

(1979); *Richards v. Emanuel County Hospital,* 603 F.Supp. 81 (S.D.Ga.1984); *Boals v. Gray,* 775 F.2d 686, 690 (6th Cir.1985). Therefore, summary judgment is appropriate on the procedural due process claim contained in Count Two of the complaint.

Defendants also argue that Plaintiff's substantive due process rights have not been violated. Defendants contend that the order that Plaintiff submit to a urinalysis does not constitute an egregious government intrusion upon a personal interest sufficient to constitute a due process violation.

■ The test of constitutionality for an invasion of a public employee's protected rights is derived from the nature of the rights involved. Where the employee asserts that he is being deprived of a right specifically protected by the Constitution, the standard applicable to a deprivation of that right applies. *Division 241, Amalgamated Transit Union v. Suscy,* 538 F.2d 1264, 1266 (7th Cir.1976). Thus, when an employee asserts that his Fourteenth Amendment rights are being impinged upon by a rule, regulation, or order of his employer, the state need only show that such rule is reasonable. *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). The constitutional issue to be decided in such cases is whether there is any rational connection between the challenged rule or regulation, and the protection of public welfare and property. *Id.* at 247, 96 S.Ct. at 1445–46; *Williamson v. Lee Optical Company,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).

■ Here, the Bureau of Fire Services has a strong interest in protecting the public by insuring that its employees are fit to perform their jobs. Drug use among firefighters could impact negatively on their job fitness and performance, thereby threatening the safety of the community. The suspected use of drugs by firefighters is a sufficiently rational justification for the requirement that they submit to urinalysis tests. It was therefore not arbitrary and capricious for Defendants to suspend and ultimately terminate Plaintiff for re-

fusing to comply with the Bureau's order that he submit to such a test. Summary judgment on the substantive due process claim contained in Count Two of the complaint will also be granted.

Defendants next argue that they are entitled to summary judgment on Count Three of the complaint, in which Plaintiff alleges that the Department of Public Safety had no standard operating procedure requiring urinalysis testing or cooperation in department investigations prior to Napper's order of August 3, 1984. Plaintiff contends that since there had been no such policy prior to Napper's order, and since he had no notice of this order, the order itself and his discharge for failing to comply with it were arbitrary and capricious. Defendants respond that the Department did have outstanding rules concerning the use of drugs, that Napper's order was a valid exercise of his authority as Commissioner of Public Safety, and that neither the Department's rules nor Napper's order were arbitrary and capricious.

During the year 1984, the Department of Public Safety had the following work rules. Rule 2.14, pertaining to intoxicants, stimulants or depressants, provided that:

a. Employees shall not consume intoxicants or illegal stimulants or depressants while on duty nor shall they consume intoxicants, legal or illegal stimulants, or depressants to the extent that performance is impaired.

b. The smell of intoxicants on the breath or any impaired performance resulting from the use of stimulants or depressants by an employee reporting for duty, or while on duty, is grounds for disciplinary action. The employee shall be immediately relieved from duty.

c. No intoxicants, illegal stimulants, or depressants shall be consumed in any department facility or vehicle.

Rule 2.33, pertaining to conformance to directives, provided that:

Every employee of the department shall familiarize herself/himself with and conform to rules, regulations, directives, and standard operating procedures of the department.

Further, Rule 2.39, entitled "Understanding Directives," provided that "an employee who does not understand an official department directive or procedure shall seek the advice of his/her supervisor."

In addition to these rules, the Department of Public Safety had a standing general order No. 83–5, which established the Department's policy regarding employee intoxication and substance abuse. Moreover, the Commissioner had issued his memorandum of August 3, 1984, which required all employees to cooperate in an investigation as to drug use and to submit to a drug screeening test if required to do so. The memo stated that the requirement of a drug screening test would be considered a direct order and refusal to follow it would subject the employee to discipline.

■ Plaintiff argues that the Commissioner had no authority to issue such a directive. However, the Code of Ordinances of the City of Atlanta, Section 11–1002 of Part 2, gives the Commissioner broad administrative powers to administer corrective and disciplinary action, to suspend employees pending investigation, to initiate investigation into employees conduct, and "to develope other necessary procedures for the implementation of the rules and regulations" of the Department of Public Safety. Under the quoted language, contained in subsection (4) of Section 11–1002, the Commissioner's August 3, 1984 directive was clearly a valid exercise of his discretionary authority to take the necessary steps to implement the Department's rules and regulations. As Plaintiff has not met his burden of showing that either the Commissioner's directive or the disciplinary action taken against Plaintiff pursuant to that directive were so irrational as to be arbitrary and capricious, that directive did not violate Plaintiff's Fourteenth Amendment rights. *See Kelley v. Johnson, supra.* Therefore, summary judgment in favor of Defendants on Count Three of the Complaint is appropriate.

■ Defendants next argue for summary judgment on Count Four of the complaint, which alleges that Plaintiff's equal

 

protection rights were violated because Plaintiff was ordered to take a urinalysis test, while other employees who also knew Hodges were not ordered to take the test. Plaintiff contends that firefighter Phillips, whose automobile was believed to have been seen in front of Hodges' home, received preferential treatment because he was not required to undergo urinalysis. However, Sgt. Lathrope has testified that although the license tag on the van which appeared in front of Hodges' home in the surveillance videotapes was traced to a "J.D. Phillips," the owner of the van was a person other than firefighter Phillips. There was therefore no evidence linking firefighter Phillips to drug abuse, and no basis upon which to order him to undergo a urinalysis test. On the other hand, Hodges' statement connected Plaintiff and several other employees to drug use. Each of these employees, whom the investigators had reason to believe had in fact purchased or used drugs, were required to take drug screening tests. Plaintiff has therefore failed to establish that individuals who were similarly situated to himself were treated differently, and summary judgment on his equal protection claim will be granted.

Defendants finally argue that Plaintiff's claims under state law against the City of Atlanta are barred for failure to give ante litem notice of the claim, as required by O.C.G.A. § 36–33–5. That statute requires that anyone with a claim against a municipal corporation "present the claim in writing to the governing authority of the municipal corporation" within 6 months of the happening of the event giving rise to the claim. This requirement is a statute of limitations and satisfaction of the requirement is a condition precedent to maintaining a lawsuit on the claim. *Shaefer v. Mayor and Council of the City of Athens*, 120 Ga.App. 301, 170 S.E.2d 339 (1969). It is undisputed that Plaintiff failed to give the required notice of his state tort claims against the City of Atlanta. Therefore, his state tort claim against the City is barred as a matter of law.

Count Six of the complaint asserts an invasion of Plaintiff's privacy under state law against the remaining Defendants. As the court has determined that Plaintiff has failed to establish his case under 42 U.S.C. § 1983, however, the court declines to assert jurisdiction over the remaining state tort claim. *See United Mineworkers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966).

Accordingly, Defendants' motion for summary judgment is GRANTED.