Kathleen M. RYAN

v.

**CITY OF AUGUSTA et al.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1993.
Decided March 1, 1993.

Mark Kierstead, (orally), Waterville, for plaintiff.

Christopher C. Taintor, (orally), Norman, Taintor & Detroy, Portland, for defendants.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Defendants William T. Logan, school superintendent, and Diane Todd, a supervisor in the Augusta school system, appeal from an order entered in the Superior Court (Kennebec County, *Chandler, J.*) denying their motion for a summary judgment based on their claim of qualified immunity from suit under 42 U.S.C.A. § 1983 (1981). Because we conclude that plaintiff Kathleen M. Ryan was not deprived of a constitutionally protected property interest without due process, we direct the entry of a summary judgment in favor of the individual defendants.

## I.

Kathleen Ryan was employed by the City of Augusta school system as a literacy specialist during the 1987–88 and 1988–89 school years pursuant to two one-year probationary employment contracts. During the 1987–88 school year Ryan received two negative evaluations from her supervisor, Theresa Nichols, who recommended that Ryan's contract not be renewed for the 1988–89 school year. Ryan's relationship with Nichols had been "stormy," and she felt that Nichols gave her false evaluations to justify her dismissal. After meeting with Ryan and her union representative, the school superintendent recommended that Ryan's contract be renewed. After her contract was renewed, Nichols resigned in protest.

Before the beginning of the 1988–89 school year, William Logan became the superintendent of schools and Diane Todd became Ryan's supervisor. Todd evaluated Ryan in November 1988. Soon thereafter, Todd informed Ryan that there would be a meeting to discuss whether she would continue to be employed. During the meeting, Logan told Ryan that she would not be rehired for the following year. Ryan first saw Todd's evaluation sometime after the meeting. She felt it was worse than either of the evaluations Nichols had done the previous year and that Todd's comments, observations, and conclusions were untrue.

Throughout the 1988–89 school year, Ryan was treated differently from other probationary teachers. Specifically, Todd observed Ryan's classroom performance more frequently than she observed other probationary teachers, and sent memos containing negative criticism of Ryan not only to her but to others in the school system. Although Ryan felt that she was being treated unfairly, she never filed a grievance as she was entitled to do under the terms of the collective bargaining agreement. Despite her request for assistance in filing a grievance, Ryan's union representative advised her not to "rock the boat." Ryan later made a similar request to a representative of the Maine Teachers Association (MTA), but was told that the MTA could not do anything for her because she was a probationary teacher.

Ryan left her employment with the school system in April 1989. She was not fired; rather, she was advised by her physician to terminate her employment because of the stress she was experiencing. Thereafter, Ryan commenced this action against the City, Logan, and Todd, alleging, *inter alia,* that she had been deprived of property without due process. The individual defendants moved for a summary judgment, arguing that Ryan had not been denied due process and that in any event they were entitled to qualified immunity from suit. The court found that there were genuine issues of material fact whether Logan and Todd constructively discharged Ryan and whether Logan rebuffed Ryan's attempts to utilize the grievance procedures. The court further found that Logan and Todd were not entitled to qualified immunity. Their appeal followed.

## II.

The denial of a defendant's motion for a summary judgment based on qualified immunity from a plaintiff's § 1983 suit is immediately appealable under the "collateral order" exception to the final judgment rule. *See Mitchell v. Forsyth,* 472 U.S. 511, 524–26, 105 S.Ct. 2806, 2184–85, 86 L.Ed.2d 411 (1985); *Lord v. Murphy,* 561 A.2d 1013, 1015 (Me.1989). Under the qualified immunity doctrine, government officials performing discretion-

ary functions are immune from suit in actions brought pursuant to § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The application of the qualified immunity doctrine turns on the "objective legal reasonableness" of the official's action viewed in light of the "clearly established" legal rules at the time the action was taken. *See Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citing *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738–39). In order to determine that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*, 483 U.S. at 640, 107 S.Ct. at 3039; *see also Fonte v. Collins*, 898 F.2d 284, 285 (1st Cir.1990). It is not necessary, however, for the action in question to have been previously held to be unlawful. *See Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039; *Germany v. Vance*, 868 F.2d 9, 16 (1st Cir.1989).

By 1989 a handful of courts had held that a constructive discharge of a public employee without procedural due process constitutes an unconstitutional deprivation of property. *See Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir.1988); *Parrett v. City of Connorsville*, 737 F.2d 690, 694 (7th Cir.1984), *cert. dismissed*, 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); *McAdoo v. Lane*, 564 F.Supp. 1215, 1221 (N.D.Ill.1983), *aff'd*, 774 F.2d 1168 (7th Cir.1985). *Cf. Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986) (constructive discharge of a public employee violates procedural due process only if purpose is to avoid affording pretermination hearing procedures). In addition, it has long been held that under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e *et seq.* (1981 & Supp.1992), employment discrimination that takes the form of constructive discharge is illegal. *See generally* Annotation, *Circumstances in Title VII Employment Discrimination Cases (42 USCS §§ 2000e et seq.) Which Warrant Finding of "Constructive Discharge" of Discriminatee Who Resigns Employment*, 55 A.L.R. Fed. 418 (1981). Moreover, by 1989 it was clear that a constructive discharge of a public employee for having criticized a supervisor violated the employee's first amendment rights. *See, e.g. Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir.1977).

Notwithstanding their contentions to the contrary, based on the foregoing it is clear that in 1989 there existed sufficient case law to apprise reasonable persons in the defendants' position that constructively discharging Ryan without due process would be unconstitutional. Because their actions violated Ryan's clearly established rights, Logan and Todd are not entitled to qualified immunity.

### III.

We recognize that three views have emerged in the federal courts of appeals concerning the extent to which review of the qualified immunity issue permits interlocutory review of the underlying substantive merits of a plaintiff's claim. *See, e.g., Dube v. State Univ. of New York*, 900 F.2d 587, 598 (2d Cir.1990), *cert. denied sub nom. Wharton v. Dube*, —— U.S. ——, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991) (review of the merits is within court's discretion); *Chrissy F. by Medley v. Mississippi Dept. of Pub. Welfare*, 925 F.2d 844, 848–49 (5th Cir.1991) (review limited to immunity issue); *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 55 n. 10 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 993, 117 L.Ed.2d 154 (1992) (merits reviewed to the extent they are "inexorably intertwined" with immunity issue). Unlike the federal appellate courts, however, we are not jurisdictionally constrained by the final judgment rule. *See* 28 U.S.C.A. § 1291 (Supp.1992). Rather, we have created the final judgment rule as a prudential rule to prevent piecemeal appeals. *See State v. Pinkham*, 586 A.2d 730, 731 (Me.1991). Because the issues have been fully briefed and argued, and because review of the merits will finally dispose of this case with respect to Logan and Todd, in the interests of judicial econo-

my we will address the merits of Ryan's § 1983 claim. *See id.; Department of Human Servs. v. Lowatchie,* 569 A.2d 197, 199 (Me.1990).

## IV.

■ To prevail on her due process claim under § 1983, Ryan must establish that a person acting under color of state law deprived her of a constitutionally protected liberty or property interest without due process. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part not relevant here, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). Assuming without deciding that the defendants' conduct constituted a constructive discharge thereby depriving Ryan of a constitutionally protected property interest in her employment, we conclude that such deprivation was not without procedural due process.

Once it has been determined that the due process clause applies, the remaining question is "what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In this regard the United States Supreme Court has generally held that due process requires some kind of a hearing before a government deprives a person of property. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Logan and Todd contend that the grievance procedures of the collective bargaining agreement provided Ryan with adequate predeprivation process and that her failure to submit to those procedures precludes consideration of the fairness of those procedures. Ryan does not dispute the fact that the grievance procedures constituted available predeprivation process. Rather, she contends that the process was essentially meaningless because Logan rebuffed her attempts to institute the grievance procedures.

■ A grievance procedure created under a collective bargaining agreement can satisfy the requirements of due process. *See, e.g., Armstrong v. Meyers,* 964 F.2d 948, 950 (9th Cir.1992); *Narumanchi v. Board of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988); *Parrett,* 737 F.2d at 696–97. The plaintiff's nonutilization of an available grievance procedure, however, cannot be relied upon if the plaintiff's good-faith attempts to utilize it have been thwarted by the defendants. *See Dunham v. Crosby,* 435 F.2d 1177, 1180 (1st Cir.1970), *overruled in part not relevant here, Raper v. Lucey,* 488 F.2d 748, 751 n. 3 (1st Cir.1973). On this point, the court found that a genuine issue of material fact exists whether Logan discouraged Ryan from filing a grievance. Logan and Todd contend that the court's finding is predicated on a mischaracterization of the evidence and is therefore clearly erroneous. We agree.

■ The court's mischaracterization of the evidence stems from a sentence contained in Ryan's memorandum in opposition to the defendants' motion for a summary judgment, which in turn came from statements made by Ryan in an affidavit submitted in response to the defendants' motion to dismiss. In the affidavit Ryan asserted that the MTA "wrote to William Logan for me asking for an impartial hearing" and that "the MTA told me that the reason they could not file a grievance for me was because I was not a tenured teacher, after they had received Logan's response saying there would be no hearing." In her deposition, however, Ryan testified that the "impartial hearing" she mentioned in her affidavit did not relate to the grievance process at all, but rather an "impartial evaluation by a competent literacy professional." Thus the record clearly shows that Logan rebuffed Ryan's attempts to have an independent evaluation of her performance, rather than her attempts to utilize the grievance procedures. Moreover, Ryan testified that *no one* other than representatives of the MTA or the Augusta Teachers Association discouraged her from filing a grievance.

The grievance procedures available to Ryan pursuant to the collective bargaining agreement constituted adequate predeprivation process, and the court's finding that a genuine issue of material fact exists

whether Logan discouraged Ryan from filing a grievance is clearly erroneous. We conclude, therefore, that the Superior Court erred in denying the defendants' motion for a summary judgment.

The entry is:

Judgment vacated.

Remanded to the Superior Court with instructions to enter a summary judgment in favor of defendants William T. Logan and Diane Todd.

All concurring.