Mark STRUCK

v.

Frank HACKETT, et al.

Supreme Judicial Court of Maine.

Argued Sept. 20, 1995.
Decided Nov. 27, 1995.

Eric M. Mehnert (orally), Hawkes & Mehnert, Augusta, for Plaintiff.

William R. Fisher (orally), John J. Wall, III, Monaghan, Leahy, Hochadel & Libby, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

The defendants, Kennebec County Sheriff Frank Hackett, the County, and the County Commissioners,[1] appeal from a partial denial of their motions for a summary judgment entered in the Superior Court (Kennebec County, *Chandler, J.*). Mark Struck cross-appeals from the entry of a partial summary judgment in favor of the defendants. This suit centers on Struck's claim that his termination from his position as a patrol deputy with the Sheriff's Department was wrongful and in violation of his constitutional, statutory, and contractual rights. Because Struck failed to present evidence to support a recovery against any defendant under federal or state law, we vacate the judgment in part and remand for entry of a judgment for the defendants.

The Kennebec County Jail is part of the corrections division of the Sheriff's Department. The other division of the Sheriff's Department is the law enforcement division. The Sheriff maintains operational control over both the corrections and the law enforcement divisions. Although both departments are managed by the Sheriff, the budgets for each department are completely separate. In addition, positions in the two departments are quite distinct; differences in educational and training requirements, uniforms, use of county vehicles, authority to make arrests, and authority to carry a firearm, set patrol officers apart from corrections officers.

The Sheriff submits department budget proposals to the County Commissioners. In addition, the Sheriff is required by statute to receive prior approval from the County Commissioners when hiring or terminating a full-time employee.[2]

---

1. The County Commissioners named are: Charles Dow, Sr., George Jabar, II, and Wesley G. Kieltyka. Struck's complaint avers six separate counts against Hackett and against "Kennebec County;" it would appear that Struck's use of the term encompasses both Kennebec County and the Kennebec County Commissioners.

2. 30–A M.R.S.A. § 501 (1994) provides in pertinent part:
 **1. Employment.** All county officers or department heads shall submit to the county commissioners or the County Personnel Board, if one has been established under article 2, the name of any person the county officer or department head ⌐ proposes to employ or the names of more than one person from which the county commissioners or personnel board are to select a person for employment. The county commissioners or the County Personnel Board may approve the employment of the person or select a person for employment. If approval is withheld or a selection is not made, the county commissioners or the County Personnel Board, within 14 days after the name or names have been submitted, shall notify the county officer or department head of the reasons for their disapproval or failure to make a selection.

 . . . .

 **3. Dismissal, suspension, discipline.** A county officer or department head may dismiss, suspend or otherwise discipline a department employee only for cause, except as provided in paragraph A. Cause for dismissal, suspension or disciplinary action must be a just, reasonable, appropriate and substantial reason for the action taken that relates to or affects the ability, performance of duties, au- .

Struck began work as a corrections officer for the Kennebec County Jail on May 15, 1989. He attended the two-week basic corrections course at the Criminal Justice Academy, and then served a six-month probationary employment period as a corrections officer. During this probationary period, Struck was evaluated in writing by his immediate supervisors at least twice. Struck was hired as a permanent, non-union Corrections officer at the end of his probationary period. During his time as a Corrections officer, Struck began dating Hackett's personal secretary, Jean Lettre, and then moved to her residence.

In the early spring of 1991, while still working as a permanent, non-union corrections officer, Struck applied for a position as a patrol officer. Struck was officially placed in his new position on March 8, 1991. Struck was to undergo an additional probationary period in this new position until August or September of 1991. During this probationary period, Struck was never officially evaluated, either in writing or orally. When he inquired of his immediate supervisors, Struck alleges they told him not to worry about evaluations because he had already passed the probation and was guaranteed a permanent position.

On June 24, 1991, Hackett discovered that his personal secretary, Jean Lettre, had embezzled several thousand dollars from the department, through her access to seized evidence and other department funds.[3] On hearing of Lettre's embezzlement, Struck immediately moved out of the home they shared together and returned to his parents' home. Struck was never charged with any connection to Lettre's criminal activity.

On June 26, 1991, Hackett summoned Struck to his office and handed him a termination letter. Hackett also gave Struck the option of submitting a resignation letter instead of being fired. At no time did Hackett seek or obtain the approval of the County Commissioners to terminate Struck. On June 28, 1991, Struck submitted his resignation letter to Hackett.

Count I of Struck's complaint alleges that the defendants violated 42 U.S.C.A. § 1983 (1994),[4] by depriving Struck of a property right (continued employment) without due process of law, and by depriving him of his Fourth Amendment right to be free from unreasonable intrusion into his privacy in his personal relationships; Count II alleges that the defendants violated the Maine Civil Rights Act, 5 M.R.S.A. §§ 4681–4685 (Supp. 1994); Count III alleges a breach of contract; Count IV alleges a breach of the implied covenant of good faith and fair dealing; Count V alleges a breach of an implied contract; Count VI alleges a breach under a detrimental reliance/promissory estoppel theory. Struck requests compensatory and expectancy damages (including reinstatement and back pay) on all counts; punitive damages are sought on Counts I and II (the civil rights claims).

Pursuant to M.R.Civ.P. 56(c), a partial summary judgment was granted in favor of the County and the Commissioners on Count

---

thority or actions of the employee or the public's rights or interests.

**A.** An employee may be dismissed by a county officer or department head only for cause and only with the prior approval of the county commissioners or personnel board, except that county employees may be laid off or dismissed, with the approval of the county commissioners or personnel board, to meet the requirements of budget reduction or governmental reorganization.

**B.** In every case of suspension or disciplinary action other than dismissal, at the employee's request, the county commissioners or personnel board shall investigate the circumstances and fairness of the action and, if they find the charges unwarranted, shall order the employee's reinstatement to the employee's former position with no loss of pay, rights or benefits resulting from the suspension or disciplinary action.

3. Lettre pleaded guilty to two Class B thefts for the embezzlement.

4. 42 U.S.C.A. § 1983 (1994) provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction hereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

I, the section 1983 claim, on the basis that Struck had submitted no evidence establishing the involvement of the Commissioners in his termination and no evidence of a pervasive policy of non-reviewal of the Sheriff's termination decisions. A summary judgment was entered in favor of all defendants on Count II, the Maine Civil Rights Act.[5]

The court denied the defendants' motions for a summary judgment on Count I as to Hackett, and on Counts III through VI [6] as to all defendants. The court granted a summary judgment for the County and the Commissioners on Struck's claims for punitive damages.[7] The defendants appealed those portions of the order denying summary judgments and, following the entry of a final judgment pursuant to M.R.Civ.P. 54(b), Struck cross-appealed.

■ Ordinarily, an order denying a motion for summary judgment would not be immediately appealable because it is not a final judgment. An exception to the final judgment rule is applicable here, however, because of the assertion by the defendants of qualified immunity or discretionary function immunity. *See Creamer v. Sceviour*, 652 A.2d 110, 112 n. 4 (Me.1995) (citing *Ryan v. City of Augusta*, 622 A.2d 74, 75 (Me.1993)).

■ On appeal, "[w]e review the trial court's decision [on a motion for summary judgment] for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered, and will affirm a summary judgment 'when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.'" *Creamer*, 652 A.2d at 113 (citing *Finnemore v. Bangor Hydro–Elec. Co.*, 645 A.2d 15, 16 (Me.1994)).

## I.

■ Defendants contend that Hackett is immune from suit under 42 U.S.C.A. § 1983 because of "qualified immunity." Whether a defendant is immune from suit is a question of law. *Polley v. Atwell*, 581 A.2d 410, 412 (Me.1990). "Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit in actions brought pursuant to § 1983 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Ryan*, 622 A.2d at 75–76 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

> The application of the qualified immunity doctrine turns on the "objective legal reasonableness of the official's action viewed in light of the 'clearly established'" legal rules at the time the action was taken. In order to determine that a right is clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." It is not necessary, however, for the action in question to have been previously held to be unlawful.

*Ryan*, 622 A.2d at 76 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 640, 107 S.Ct. 3034, 3038, 3039, 97 L.Ed.2d 523 (1987)). Therefore, under the section 1983 claim, Struck must establish that (1) he possessed a particular statutory or constitutional right, (2) Hackett violated that right, (3) the right was clearly established at the time, and (4) a reasonable official would have known that his actions violated that clearly established right.

■ Struck argues that he was deprived of a clearly established right to due process when he was deprived of a property right (employment) without a hearing. "[D]ue process requires some kind of a hearing before a government deprives a person of property." *Ryan*, 622 A.2d at 77 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985)). The facts are sufficient to support a claim that Struck was terminated without a hearing, but Struck must establish that he had a property right in his employment.

---

5. Struck does not challenge the entry of summary judgment on the state civil rights claim.

6. The order actually refers to Counts III through VII, however, there was no Count VII.

7. Struck does not challenge the entry of a summary judgment on the claim for punitive damages against the County or the Commissioners.

## A.

■ A statutory right to termination only for just cause creates a constitutionally protected property right. *Hammond v. Temporary Compensation Review Bd.*, 473 A.2d 1267, 1272 (Me.1984). Struck argues that he was protected from termination except for just cause by virtue of the statutory scheme that guides the operation of the Kennebec County Sheriff's Department. He contends that 30–A M.R.S.A. § 381 (Pamph.1994),[8] which specifically deals with probationary deputies, incorporates into it all the protection of section 501(3), and that although the Sheriff could have chosen not to reappoint Struck at the end of the 6–month probationary period for any reason or no reason, he could not terminate him prior to that time except for just cause. We disagree.

■ Not all of the protections of section 501 are incorporated into section 381. The procedures of section 501 are contained in section 381 only with respect to *appointments*, not *terminations*, of deputies. Within section 381 there is a distinction between probationary deputies and permanent deputies, and the authority of the Sheriff to terminate probationary employees is not limited. The language in section 381 regarding the probationary period *limits* the length of that period to not more than six months; it does not *guarantee* that the probationary employment will be six months.

■ An interpretation of section 501 to restrict the power of the Sheriff to terminate probationary employees would render the term "probationary" meaningless, and it is well established that "[n]othing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." *Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979). Struck did not have a property right in his probationary position by virtue of any statutory scheme.

## B.

Struck argues in the alternative that he had a property right in a permanent position as a patrol deputy by virtue of the conduct and practices of his employer. He alleges that he was assured by his immediate supervisors that he had earned a permanent position following probation, and that Hackett's failure to demand evaluations from Struck's supervisors constitutes ratification of their alleged statements. Struck contends that the organizational structure of the two departments is such that his new position was merely a 'transfer,' and that he was never in a second probationary period. Finally, Struck argues that the Department's practice of treating union and non-union employees similarly, and of terminating probationary employees only for just cause, created a reasonable expectation of continued employment.

■ Assuming all of Struck's allegations are true, as we must, *see Estate of Althenn v. Althenn*, 609 A.2d 711, 714 (Me. 1992), they nevertheless fail as a matter of law to establish a reasonable expectation of continued employment. Although it is true that such expectations, and with them a protected property interest, can be created by

---

8. 30–A M.R.S.A. § 381 (Pamph.1994) provides in pertinent part:

The sheriff may appoint, subject to the requirements of section 501, full-time or part-time deputies, whose special duties are to enforce the criminal laws in the county.

1. **Qualifications for appointment.** To be eligible for appointment, a deputy must have:
 A. Actual experience in law enforcement duties;
 B. Training in criminal justice or law enforcement from an accredited college or university or from the Maine Criminal Justice Academy.
 C. Knowledge of the duties, activities and responsibilities of a deputy gained from other experience or training.

2. **Training at the Maine Criminal Justice Academy required.** Appointed deputies are subject to the training requirements of Title 25, sections 2804–B to 2804–F.

3. **Tenure of office.** Deputies shall be originally appointed for a probationary period of not more than 6 months and thereafter may be appointed or reappointed for a term of 3 years.
 A. The failure of a sheriff to reappoint a deputy, except for appointment at the end of the probationary period, is subject to the procedures and standards for dismissal of an applicable collective bargaining agreement.

4. **Sheriff to furnish names.** From time to time, each sheriff shall furnish to the county commissioners of that county the names of the deputies appointed ...

virtue of unwritten or implicit understandings regarding employment terms, *see Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (the absence of a formal contract does not bar a professor from arguing he had tenure by mutual understanding), the circumstances in this case preclude such an expectation. The Department had explicit employment policies for each type of employee. There was no 'general' employment contract. Additionally, the statements by Struck's supervisors cannot be reasonably relied on when those supervisors had no statutory authority to bind the Department to an employment contract. *See Lynch v. Lewiston School Comm.,* 639 A.2d 630, 633 (Me.1994) (promises by school committee not binding where superintendent had ultimate hiring authority). Finally, the mere fact that the Department had a general practice of not terminating employees for arbitrary reasons does not give rise to a binding promise of "just cause" termination protection resulting in a property right. *Id.* at 633.

## C.

■ Struck's complaint further alleges a violation of his right to privacy[9] under the Fourth Amendment in his intimate personal relationship with Jean Lettre. Because he has failed to allege any search or seizure, or even a threat of a search or seizure, perpetrated by Hackett, that claim for violation of his privacy right, a 'penumbral' right under the Fourth Amendment, must fail. "[T]here can be no Fourth Amendment violation when there has been no actual search." *Everett v. Napper,* 632 F.Supp. 1481, 1484 (N.D.Ga.1986). Struck does not allege that Hackett asked inappropriate questions about his personal life, or demanded to inspect Struck's home or personal papers. The allegation is that he was terminated in retaliation for his relationship with Lettre, an allegation that implicates the right to privacy in personal relationships un-

der the First, and not the Fourth, Amendment.

In response to Struck's First Amendment claim, the defendants contend, *inter alia,*[10] that there is no First Amendment right with respect to dating, and that, if there is such a right, it was not "clearly established" at the time of the incident in question. We agree.

■ The freedom of association protected under the First Amendment includes not only expressive association (i.e., for political or religious purposes) but also the "freedom of intimate association." *Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Although *Roberts* may leave open the possibility that relationships short of marriage, such as engagements, will be constitutionally protected "intimate associations," the case law is far from certain on that issue. *See Swank v. Smart,* 898 F.2d 1247, 1251–52 (7th Cir.1990) (no right of intimate association implicated when police officer gave half-hour ride on motorcycle to young woman of casual acquaintance); *see also City of Dallas v. Stanglin,* 490 U.S. 19, 24, 109 S.Ct. 1591, 1594, 104 L.Ed.2d 18 (1989) (attendance at dance hall with other teenagers does not satisfy requirements); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 237, 110 S.Ct. 596, 610, 107 L.Ed.2d 603 (1990) (relationship of ten hours carried out in a motel room not type of intimate association protected by the First Amendment).

■ A distinction between marital and nonmarital cohabitation is delineated in a number of areas of the common and statutory law. The constitutional right to privacy in the kind of relationship that Struck had with Lettre is certainly not "clearly established." *See Cameron v. Seitz,* 38 F.3d 264, 273–275 (6th Cir.1994) (right to marital association not clearly extended to engagement).

## D.

In his cross-appeal, Struck argues that it was error to enter summary judgment in

---

9. In his brief, Struck does not address any violation of his rights to privacy under the Fourth Amendment. This claim was included in the original complaint, however, and Hackett was denied a summary judgment.

10. The defendants also contend that Struck was properly terminated for reasons unrelated to his relationship with Lettre.

favor of Kennebec County and the Commissioners on Struck's section 1983 claim, because there are genuine issues of fact concerning whether the Commissioners had a policy of not reviewing Hackett's termination decisions, and whether that policy was a direct cause of Struck's loss of constitutional and statutory rights.

 Struck's claim does not allege any direct action by the Commissioners that would constitute a section 1983 violation. Although Struck asserts, under a theory of municipal liability, that the practices of the Commissioners allowed Hackett to violate his statutory and constitutional rights, Struck has demonstrated *no* violation of any of his clearly established rights. Accordingly, the section 1983 claim against the County and the Commissioners must fail.

### II.

 The court denied a summary judgment to the defendants on Struck's state law contract claims. Struck contends that the defendants' appeals from those denials are not immediately reviewable because they are interlocutory and are not final judgments. The final judgment rule is a prudential rule, judicially created and designed to prevent piecemeal appeals. *Ryan*, 622 A.2d at 76. One of the recognized exceptions to the final judgment rule is "applied when the interests of judicial economy dictate that the merits of the case should be addressed immediately ...[;]" when review of a nonfinal order can finally dispose of the entire litigation, and immediate review is required by the interests of justice. *Department of Human Servs. v. Lowatchie*, 569 A.2d 197, 199 (Me. 1990) (citations omitted). Such is the case here. Those state law claims rest on the same factual allegations supporting Struck's section 1983 claims: that Struck had a right to continued employment by virtue of statute and by the conduct and practices of the Sheriff's Department and some of its employees.

 As the plaintiff, Struck has the burden to demonstrate the *wrongfulness of* his termination. It is clear that these defendants would be entitled to a judgment as a

matter of law at a trial if Struck had presented nothing more than was before the court at the time summary judgment was entered. Accordingly, the defendants are entitled to a summary judgment. *H.E.P. Dev. Group, Inc. v. Nelson*, 606 A.2d 774, 775 (Me.1992). Because the defendants' entitlement to a summary judgment is clear, it makes little sense to remand the case for any further proceedings. *Lowatchie*, 569 A.2d at 199; *see Milstar Mfg. Corp. v. Waterville Urban Renewal Auth.*, 351 A.2d 538, 540–41 (Me. 1976).

 Struck had no statutory right to continued employment, and no contract right by agreement with his employer. He has not established that any contract was created with authority to bind the County.

[O]ne member of a board of selectmen cannot bind a town to a contract unless his authority to act alone is proved or his actions subsequently ratified. All persons contracting with town or city officers must take notice at their peril of the extent of the authority of such officers. It is not the town's burden to establish the absence of authority but the plaintiff's burden to prove the authority.

*Sirois v. Town of Frenchville*, 441 A.2d 291, 294 (Me.1982) (citations omitted).

Similarly, the facts alleged by Struck are insufficient to support a claim for an implied contract of employment. A claim in the context advanced by Struck is not recognized in Maine. As we stated in *Larrabee v. Penobscot Frozen Foods*, 486 A.2d 97, 99–100 (Me. 1984):

In Maine it has long been the rule that a contract of employment for an indefinite length of time is terminable at the will of either party. Under this rule, as well as under the law of the majority of jurisdictions, the Plaintiffs' allegations that the Defendant had entered into an implied contract to discharge them only in good faith and for good cause would be fatally deficient.... [P]arties may enter into an employment contract terminable only pursuant to its express terms—as 'for cause'— by clearly stating their intention to do so.

Struck's additional allegation that the Sheriff's Department breached its implied duty of good faith and fair dealing when it failed to evaluate him during his probationary period and when it falsely assured him of his guaranteed, permanent position is without foundation. "[Plaintiff] urges us to recognize this cause of action [for breach of implied covenant of good faith and fair dealing] in the context of an employment contract where a violation of public policy is involved.... As noted above, we have consistently refused to recognize implied promises in employment contracts of indefinite duration." *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 156 (Me.1991) (citations omitted).

 Struck's brief does not address the merits of his promissory estoppel claim, and the record is devoid of sufficient evidence to support such a claim. The elements of promissory estoppel are: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Wilson v. Strong*, 474 A.2d 176, 178 (Me.1984) (quoting *Restatement (Second) of Contracts* § 90 (Tent.Draft Nos. 1–7, 1973)).

Struck cannot argue that he relied on the promises of the Sheriff's Department when he left his protected permanent position as a corrections officer for the unprotected probationary position as a patrol officer because all promises and statements alleged by Struck were made after he had changed positions, and has alleged no actions taken by himself which would constitute detrimental reliance *after* he started his new position.

The entry is:

Order denying a summary judgment to defendant Hackett on Count I vacated. Remanded for entry of a judgment for defendant Hackett.

Order denying a summary judgment to all defendants on Counts III–VI vacated. Remanded for entry of a judgment for defendants. Judgment affirmed in all other respects.

All concurring.