STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-124

GARY E. PLUMMER, ESTHER B. CLENOTT and
RICHARD D. FEENEY, in their capacity as
County Commissioners of the County of
Cumberland,

        Plaintiffs

v.

ALFRED PIOMBINO, in his capacity as
Register of Probate for Cumberland County

        Defendant

DECISION AND ORDER

A jury-waived trial in the above captioned case was held on May 2, 2003. Thereafter the parties sought and were granted leave to file post trial briefs up until May 16, 2003. A subsequent dispute over the county commissioners' failure to produce a document that had been requested by defendant Alfred Piombino prior to trial resulted in the filing by Mr. Piombino of a post-trial motion to dismiss and in the alternative a motion for a mistrial on June 2, 2003.

A hearing on Mr. Piombino's motion to dismiss and for a mistrial was held on June 30, 2003, and resulted in an order directing the county commissioners to produce the document in question (Debra Barry's Maine State Retirement System Application) to the court for *in camera* review, which resulted in its subsequent disclosure to Mr. Piombino. The document did not contain any material evidence, and Mr. Piombino's post-trial motion to dismiss or for a mistrial is therefore denied.[1]

Turning to the merits of the controversy, the court makes the following findings of fact and reaches the following conclusions of law:

---

[1] The court plans to enter a separate order with respect to the failure to provide the document.

1. In mid February 2003 Alfred Piombino was duly appointed as Cumberland County Register of Probate to fill the unexpired term of Herbert Adams, who had been elected to the State Legislature. Section 1-501 of Title 18-A provides that, in the event of a vacancy under the circumstances presented in this case, the Governor shall appoint a successor from the same political party as the Register of Probate who has relinquished the office. In making the appointment, the Governor is required to choose from the recommendations submitted by the county committee of the political party. In this case former Register of Probate Adams was apparently a member of the Democratic Party, and Mr. Piombino was the person recommended by the county Democratic Committee to replace him.

2. Serving as Deputy Register of Probate under Adams was Debra Barry. When Adams became a member of the legislature, Ms. Barry sought to succeed him as Register of Probate, but she was defeated by Mr. Piombino in the election that was held by the county committee to determine the person whom the committee would recommend to the Governor.

3. The question in this case concerns the status of Ms. Barry once Mr. Piombino was appointed. Mr. Piombino contends that Ms. Barry's tenure ended with the tenure of the person who had selected her, former Register Adams. The County Commissioners, citing 18-A M.R.S.A. §1-506 and 30-A M.R.S.A. §501, contend that Ms. Barry is a county employee who may only be dismissed for cause and that Ms. Barry remains deputy register.

4. Although Mr. Piombino has made it clear that he did not want Ms. Barry to continue as the Deputy Register, he did not dismiss Ms. Barry for cause. Moreover, under 30-A M.R.S.A. §501, Mr. Piombino could not have dismissed Ms. Barry for cause without the prior approval of the County Commissioners.

5. The County Commissioners have not approved the dismissal of Ms. Barry.

6. Mr. Piombino's position is that he does not want Ms. Barry as his deputy, that her term ended with the departure of Mr. Adams, and that he is therefore entitled to appoint a new deputy of his choice. He apparently concedes that he cannot appoint such a deputy without the approval of the county commissioners under 30-A M.R.S.A. §501.

7. This has led to the present dispute, which is stoked to some degree by the fires of politics. One of the county commissioners, Esther Clenott, supported Ms. Barry's candidacy before the county committee and wrote to the Governor to object to the method by which Mr. Piombino was recommended.[2] Mr. Piombino was also involved in a previous dispute with the county commissioners and with County Manager Peter Crichton concerning former County Treasurer Diane Gurney. This has resulted in a certain amount of distrust on both sides of the current dispute, which has not helped the parties to resolve the issues that have arisen between them.

8. Although the county commissioners' original motion for a preliminary injunction was premised on the assertion that the absence of Ms. Barry from the Register's office would be detrimental to the operations of that office, this assertion was withdrawn prior to trial and was not borne out by the evidence at trial. Mr. Piombino's proposed successor to Ms. Barry as Deputy Register was Deborah Barrett, who had previously served as Deputy Register under Gerard Conley. Prior to trial an agreement was worked out between the county commissioners and Mr. Piombino whereby Ms. Barrett was hired as a temporary employee in the Register's office with

---

[2] Ms. Clenott acknowledged at trial that she had not produced her correspondence with the Governor even though it had been requested in discovery. Although Mr. Piombino obtained the documents in question anyway, the court takes a dim view of the failure to produce the documents in question. There is no exemption in the rules of discovery for political correspondence.

3

the understanding that she would function as Deputy Register until this dispute was resolved.

9. Prior to trial, counsel for the county commissioners advised the court that the commissioners agreed that Ms. Barrett was performing in a fully competent manner. Moreover, the only evidence offered at trial was to the effect that the office of Register under Mr. Piombino and Ms. Barrett was functioning in a satisfactory manner. Although the uncertainty and divisiveness engendered by the current dispute over Ms. Barry's status is a potentially disruptive factor, the court concludes that the commissioners have not demonstrated on this record that there would be irreparable harm to the operations of the Register's office in the absence of injunctive relief.[3]

10. There was also unrebutted evidence at trial that Ms. Barry had made various statements around the time of Mr. Piombino's appointment suggesting that if she remained as Deputy Register, she would undermine Mr. Piombino and would not cooperate with him. The court does not rule on whether or not this evidence would constitute cause to dismiss Ms. Barry.[4] However, this evidence is more than sufficient to reinforce the court's view that it would not grant to the county commissioners either preliminary or permanent injunctive relief restoring Ms. Barry to her position if the commissioners prevailed, but would limit itself to a declaratory judgment at this time. At some point down the road, supplemental relief upon a proper showing may be available under 14 M.R.S.A. §5960.

11. The enmity between Ms. Barry and Mr. Piombino is not attributable solely to Ms. Barry. There was evidence that even before Mr. Piombino learned of evidence that Ms. Barry had made statements declaring herself unwilling to cooperate with him,

---

[3] The court has been informed that Ms. Barrett has since resigned. However, the court is required to base its decision on the evidence adduced at trial and cannot take account of post trial developments.

[4] For one thing, Ms. Barry was not a party to this action and would be entitled to offer evidence in rebuttal in any proceeding to dismiss her for cause. The issue of cause cannot be litigated in her absence.

4

Mr. Piombino told Mr. Crichton that he would seek to have Sheriff's Deputies remove Ms. Barry from the Register's Office if she were there when he arrived on his first day of work.

12. To the extent that the understandings of prior occupants of the Register's Office are relevant here, Mr. Piombino offered evidence that Ms. Barrett, in her prior tenure as Deputy Register, had interpreted her employment as being subject to the tenure of the Register for whom she served as deputy. Ms. Barrett further understood that she had no right to stay on once a new Register was elected, and she testified that she had derived this understanding from the Register of Probate for whom she worked and from a prior Probate Judge.

13. Irrespective of any disputes as to the facts, the court finds the nub of the dispute to be legal rather than factual in nature. 18-A M.R.S.A. §1-506 states, "Any register of probate in this State may appoint a deputy register of probate for the county, subject to the requirements of Title 30-A, section 501."

14. Section 501 of Title 30-A in turn provides that all county officers shall submit to the county commissioners the name of any person the county officer proposes to employ. The county commissioners may approve the employment of the person in question, and if approval is withheld, shall notify the county officer of the reasons for their disapproval within 14 days. See 30-A M.R.S.A. §501(1).

15. Section 501 also provides that county officers may dismiss a department employee only for cause or for budgetary reasons and that an employee may not be dismissed for cause without the prior approval of the county commissioners. 30-A M.R.S.A. §501(3) (A).

16. The court concludes that, notwithstanding the understanding of Ms. Barrett and others, 18-A M.R.S.A. §1-506 does not make Ms. Barry's term coterminous with that of the Register who appointed her. On its face, that statute makes a deputy

5

register's appointment subject to the requirements of 30-A M.R.S.A. §501. The most logical interpretation is that section 501 is applicable to all aspects of the appointment, from initial hiring to discharge. Specifically, under §501(3)(A) Ms. Barry cannot be dismissed without cause and without the prior approval of the county commissioners except for budgetary reasons.

17. To the extent that 18-A M.R.SA. §1-506 is ambiguous, the interpretation that Ms. Barry's tenure in office is not subject to termination when a new Register takes office is consistent with the relevant legislative history. Both the first sentence of 18-A M.R.S.A. §1-506 and the predecessor to 30-A M.R.S.A. §501 were derived from L.D. 1614, 110th Legis., 1st Sess. (1981). The statement of fact in L.D. 1614 states, "this new draft involves the county commissioners . . . in overseeing the appointment and discipline or dismissal of all county employees, including deputy county officers" (emphasis added).

18. While the conclusion that a deputy register's tenure is protected by 30-A M.R.S.A. §501 follows from the relevant statutes and legislative history, the issue is not entirely free from doubt because of certain case law and policy arguments advanced by Mr. Piombino. Specifically, Mr. Piombino notes that in Longley v. State Employees Appeals Board, 392 A.2d 529 (Me. 1978), the Law Court stated that "apart from statute . . . a public officer cannot give an appointee a tenure of office beyond his own." 392 A. 2d at 531, quoting Ross v. Hanson, 227 A.2d 606, 609 (Me. 1967)(emphasis added). In contrast to Longley, there are statutes in this case governing the tenure of a deputy register of probate and those statutes provide that a deputy register may not be dismissed except for cause or for budgetary reasons. Moreover, Longley involved a

6

gubernatorial appointee who served at the Governor's pleasure. Under the applicable statutes, a deputy register does not serve at the pleasure of the register of probate.[5]

19. The Law Court's decision in Struck v. Hackett, 668 A.2d 411 (Me. 1995), is more troublesome because that case involved language in 30-A M.R.S.A. §381 that is identical to the provision in 18-A M.R.S.A. §1-506 that the county commissioners rely upon in this case. Section 381 provides that county sheriffs may appoint full time or part time deputies, "subject to the requirements of section 501." Language in the Struck decision can be read to suggest that section 381 only makes section 501 applicable to the appointment of deputies and not their termination. See 668 A.2d at 41. However, in upholding the sheriff's right to terminate a deputy in the Struck case, the Law Court primarily relied on the fact that the deputy in question was a probationary employee. Specific statutory language relating to probationary employees would have been rendered meaningless if probationary employees had all of the rights of regular employees under section 501.

20. The better reading of Struck, therefore, is that it turned on Struck's probationary status. There is also no indication in Struck that the Law Court was directed to the legislative history contained in L.D. 1614. As noted above, that legislative history demonstrates a legislative choice to make the employment of deputy county employees subject to the ultimate appointment and dismissal power of the county commissioners.

21. Mr. Piombino nevertheless argues forcefully – and the court agrees – that

---

[5] Mr. Piombino's interpretation of the statute would make considerably more sense if the deputy register served at the register's pleasure. If one accepts the proposition that a register should have the right to select a deputy who enjoys his confidence, it is difficult to see why, once a deputy is selected, the register should have no ability (absent cause) to remove that deputy until the register himself leaves office. Moreover, if one adopts the notion that a deputy's tenure ends the minute the Register who appointed that deputy leaves office, a deputy would not be available to serve during the interim period before a new Register takes office – a time when the deputy's leadership would be most needed. While these anomalies would be eliminated if a deputy register served at the register's pleasure, the court can find no statutory basis for that conclusion.

7

there are strong policy arguments against reaching the above conclusion. Most notable among these are the policy concerns mentioned in Longley – that an elected department head should not have to work with a holdover deputy. These considerations are particularly strong in the instant case, where the deputy actually ran as a candidate against Mr. Piombino in the county democratic committee. The court agrees that, under the circumstances of this case, it makes eminent sense that Mr. Piombino should not have to rely upon the loyalty of a political opponent.

22.    However, the court is constrained to reach the view that the legislature held a different view of the deputy register position – one that essentially categorizes deputy registers as civil service employees. The legislature did not foresee a situation where a deputy register would run for the office of register without giving up her position and would thereafter assert a right to remain in the deputy's position in order to serve under the person she had run against. That the Legislature did not foresee the situation presented here, however, does not give the court authority to rewrite the relevant statutes.

23.    Under the circumstances, perhaps Ms. Barry would have been well advised to resign her position as deputy once she became a candidate for register, but the court has not been made aware of any statute or personnel rule obliging her to do so. Alternatively, the county commissioners should perhaps have instituted a rule that candidacy for a political office is incompatible with civil service status and required Ms. Barry to resign if she chose to run. Once again, however, the court is not aware of any legal requirement to impose a rule of this nature.

24.    Mr. Piombino has raised two other arguments. First, he contends that the county commissioners do not have standing to pursue this lawsuit. The court finds that there is standing in the instant case because 30-A M.R.S.A. §501 gives the commissioners control over the dismissal of deputy registers and they will have been deprived of that

8

control if Mr. Piombino can unilaterally dispense with Ms. Barry's services. Standing exists here because the commissioners have a direct stake in the controversy that exists over the authority to terminate the deputy register.

25.    Mr. Piombino also argues that when this case was commenced, the commissioners had not properly authorized the filing of a lawsuit. The court agrees. The combination of 30-A M.R.S.A. §102 and the Freedom of Access Law requires that county actions such as the authorization of a lawsuit be taken in a public session. However – albeit after the fact – the commissioners have since met and voted to ratify the lawsuit, and the suit was authorized by the time of trial. Under these circumstances, the court can see no reason to dismiss this case without prejudice and require the parties to begin this lawsuit all over again.

The entry shall be:

For the foregoing reasons, the court issues a declaratory judgment declaring that Ms. Barry's employment did not automatically terminate when former Register Herbert Adams resigned to take his legislative seat and that 30-A M.R.S.A. §501 governs her dismissal. However, the court finds, in light of Struck and the policy issues discussed above, that this case presents a close question and therefore stays this judgment until July 16, 2003 to give Mr. Piombino time to appeal and to seek a further stay from the Law Court. If Mr. Piombino appeals and files a motion for a stay with the Law Court within that time period, the stay granted by this court will remain in effect until the Law Court acts on Mr. Piombino's motion for a Stay. As noted above, the court will not grant any injunctive relief at this time. This is without prejudice to the rights of the parties upon proper showing to seek supplemental relief under 14 M.R.S.A. 5960.

9

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).


Dated: July 3, 2003

Thomas D. Warren
Justice, Superior Court